[Crim. No. 20549. May 25, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL MICHAEL MINJARES, Defendant and Appellant.

**COUNSEL**

C. Douglas Floyd and Dane J. Durham for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Patricia D. Benke, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BIRD, C. J.—Appellant was convicted of two counts of first degree robbery (former Pen. Code, §§ 211, 211a) and was found to have been armed at the time of his arrest. He contends that the warrantless search of a tote bag found in his car's trunk after his arrest was unlawful. This court agrees.

I

Around 8:30 p.m., on December 19, 1975, Mariana Mungia and another employee were checking and bagging groceries at checkstand four of a Safeway store in Fremont. A tall man approached the checkstand, showed them he had a gun, and told them to put the money from the cash register into a paper bag. They complied. The tall man, subsequently identified as appellant's codefendant, then joined a smaller man, later identified as appellant, at checkstand one. The smaller man asked checker Tim Prinster for money. After noticing the gun in the taller man's hand and a bulge under the smaller man's belt, Prinster told the men to take the money. The smaller man reached into the open cash drawer, removed several bills and placed them in a paper bag. The pair then left the store.

Mark Sollitt, who was waiting for Prinster to get off duty, observed the robbery and followed the two robbers. He saw them get into a car which he followed until he noted its make and license number. Then Sollitt reported the robbery to the police and gave them a description of the perpetrators and the getaway car.

The Fremont police broadcast the information concerning the Safeway robbery at approximately 9 p.m. A subsequent broadcast informed police units that the getaway car was a white Ford with license plate number 075 ALC.

Shortly after this broadcast, Fremont Police Officer Perry spotted a white Ford with license number ALC 075 proceeding north on Highway 680. Officer Perry requested the help of backup units and proceeded to stop the white Ford. Appellant, the lone occupant of the car, was ordered out. Appellant fit the description of the smaller of the two Safeway robbers. He was searched, as was the passenger compartment of the car. Neither search revealed anything to connect appellant to the robbery. Officers were unable to locate a key to the car's trunk.

The witnesses to the Safeway robbery were brought to the scene of the car stop. Sollitt and Prinster had been informed that the police had "pulled over a car that matched the description and license identifications" of the perpetrators. Mungia was told that the police had "gotten one" of the robbers. Despite these facts, no one was able to positively identify appellant as one of the robbers.

Appellant was arrested and taken to the police station. The white Ford was towed to the city corporation yard. The officers testified that they decided to open the trunk as soon as the Ford arrived at the yard rather than obtain a warrant because they believed that the second suspect might have been hiding in the trunk. None of the officers testified that they were looking for evidence that might lead them to the second suspect. The trunk's lock was picked, but no suspect was found. However, a red tote bag and several other items were removed from the trunk and photographed. The tote bag, which was zipped when recovered from the trunk,[1] was opened. In it were various items, including clothing similar to that described by witnesses to the robbery, three guns and a roll of pennies in a wrapper from the bank used by Safeway. All were admitted into evidence at the trial.

Sollitt, Prinster and Mungia identified appellant as one of the robbers prior to trial. At the trial, Mungia testified that the only reason she was able to identify appellant was because she had seen him on the highway.

Appellant testified that he had lent his car to a friend on the night in question and that the friend had transported some guns to San Jose to be sold. He stated that he had handled the guns. The car was returned to him shortly before he was stopped by the police. The prosecutor impeached this testimony by introducing a prior inconsistent statement by appellant immediately after his arrest and two unspecified prior felony convictions sustained in 1971. The codefendant was acquitted. Appellant was convicted and this appeal followed.

---

[1] At the initial suppression hearing, the officer who had picked the lock testified that the tote bag was open when he saw it in the trunk and that he could see a leather jacket and a gun butt in the bag. At trial the evidence technician who had searched the bag testified that the bag was zipped shut when it was found. Photographs not previously disclosed to the defense taken immediately before and after the bag's removal from the trunk also showed it closed. A second suppression motion was made on the basis of this newly discovered evidence. (Pen. Code, § 1538.5, subd. (h).) At the hearing on that motion, a second officer present at the search also testified that the bag had been closed. The second suppression motion was denied.

## II

This court must decide the constitutional validity of a warrantless search of luggage which was found in the trunk of a car and placed under the exclusive control of the police, after the driver was taken into custody.

■ The Fourth Amendment guarantees individuals privacy in their persons, homes, papers and effects against unreasonable searches and seizures. The "cardinal principle" of Fourth Amendment analysis is that " 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " (*Mincey* v. *Arizona* (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 298, 98 S.Ct. 2408, 2412] quoting *Katz* v. *United States* (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 585, 88 S.Ct. 507]; *Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 563 [128 Cal.Rptr. 641, 547 P.2d 417].) If the warrantless search of the tote bag is to be upheld, it is the state's burden to show that the search falls within one of those exceptions. (*McDonald* v. *United States* (1948) 335 U.S. 451, 456 [93 L.Ed. 153, 158, 69 S.Ct. 191]; *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].)

In the present case, the state primarily seeks to justify the search of the tote bag under the "automobile" exception to the warrant requirement. Soon after the automobile came into widespread use, the Supreme Court held that because of its mobility, an automobile that is stopped on the highway may be searched without a warrant when police officers have probable cause to believe it contains contraband or evidence of a crime. (*Carroll* v. *United States* (1925) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790]; see also *Chambers* v. *Maroney* (1970) 399 U.S. 42, 48-49 [26 L.Ed.2d 419, 426-427, 90 S.Ct. 1975].) The Supreme Court has further held that when there is justification for a warrantless search of an automobile stopped on the highway, the search is not invalid if undertaken later at the police station. (*Chambers* v. *Maroney, supra,* 399 U.S. at p. 52 [26 L.Ed.2d at pp. 428-429]. But see *id.,* at pp. 62-64 [26 L.Ed.2d at pp. 434-436], dis. opn. of Harlan, J.; *Cady* v. *Dombrowski* (1973) 413 U.S. 433, 450 [37 L.Ed.2d 706, 720, 93 S.Ct. 2523], dis. opn. of Brennan, J.; *Cardwell* v. *Lewis* (1974) 417 U.S. 583, 596 [41 L.Ed.2d 325, 338, 94 S.Ct. 2464], dis. opn. of Stewart, J.)

■ In the present case, at the time the trunk of appellant's car was searched and the tote bag was discovered, the car had been towed to the

city corporation yard and appellant was in custody.[2] ■ ■■■ The officers' stated purpose in opening the trunk was to search for the second suspect himself.[3] The officers could have sought a search warrant, but chose not to because of the delay involved. Even assuming the possible presence of a second suspect in the car's trunk justified opening the trunk, that possibility would not necessarily validate the subsequent warrantless search of the tote bag. ■ "[A] search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope." (*Terry* v. *Ohio* (1968) 392 U.S. 1, 18 [20 L.Ed.2d 889, 903-904, 88 S.Ct. 1868]; *Wimberly* v. *Superior Court, supra,* 16 Cal.3d at p. 567.)

Appellant contends that under the recent Supreme Court decision in *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476], the warrantless search of luggage which is under the exclusive control of police is invalid, notwithstanding the fact that the luggage has been seized from an automobile. In *Chadwick,* the Supreme Court held invalid the warrantless search of a footlocker that occurred while the footlocker was in the control of federal agents and over an hour after its possessors had been arrested. Amtrak officials in San Diego had suspected that a footlocker bound for Boston contained marijuana. They alerted federal agents in San Diego, who forwarded a description of the footlocker and the persons involved to agents in Boston, who were on hand when the footlocker was picked up. While the suspects were seated on the footlocker, the agents had a trained dog sniff the footlocker. The dog reacted, indicating to the agents that the locker contained marijuana. The agents waited to seize the footlocker until it was placed in the trunk of a suspect's car. The footlocker was removed to the federal building where an hour and a half later it was opened and searched while the suspects were in custody.

---

[2]Although the automobile in the present case was impounded, the search of the trunk and tote bag were not a routine inventory of a suspect automobile. Such an inventory, not based on probable cause, involves entirely different considerations. (*South Dakota* v. *Opperman* (1976) 428 U.S. 364, 369 [49 L.Ed.2d 1000, 1005, 96 S.Ct. 3092].) It is clear that in an inventory search, police officers would have been free neither to unlock the trunk, nor to search the tote bag. (*Mozzetti* v. *Superior Court* (1971) 4 Cal.3d 699, 707-712 [94 Cal.Rptr. 412, 484 P.2d 84].)

[3]At oral argument, respondent contended that the purpose of the search was to discover evidence that might lead to the apprehension of the second suspect. No testimony appears in the record to support this contention. Thus, this theory of respondent is not available to justify the search in this case. (See *Agar* v. *Superior Court* (1971) 21 Cal.App.3d 24, 28-30 [98 Cal.Rptr. 148].)

The government in *Chadwick* attempted to justify the warrantless search of the footlocker by analogy to the "automobile" exception to the warrant requirement. (Cf. *Chambers* v. *Maroney, supra,* 399 U.S. 42.) In rejecting this contention, the Supreme Court noted that the "automobile" exception was based on (1) an automobile's "inherent mobility, which often makes obtaining a judicial warrant impracticable" (*United States* v. *Chadwick, supra,* 433 U.S. at p. 12 [53 L.Ed.2d at p. 549]), and (2) "the diminished expectation of privacy which surrounds the automobile." (*Ibid.*) However, the court stated, "[*t*]*he factors which diminish the privacy aspects of an automobile do not apply to respondents' footlocker.* . . . Unlike an automobile, whose primary function is transportation, luggage is intended as a repository of personal effects. In sum, a person's expectations of privacy in personal luggage are substantially greater than in an automobile." (*Id.,* at p. 13 [53 L.Ed.2d at p. 549], italics added.) In addition, the court noted that luggage may be seized and held secure until a warrant is obtained. This is not always true of automobiles. (*Ibid.*) Thus, the court rejected the government's analogy, finding differences of constitutional dimension between the warrantless search of luggage and automobiles.

Although in *Chambers* v. *Maroney* the court had held that there was no constitutional difference between immobilization of an automobile pending issuance of a search warrant and immediate search (399 U.S. at pp. 51-52 [26 L.Ed.2d at pp. 428-429]), in *Chadwick* this reasoning was held inapplicable to personal luggage. The increased expectation of privacy in the contents of the footlocker compelled the conclusion that with respect to luggage, immobilization, rather than immediate search, was the lesser intrusion. (*United States* v. *Chadwick, supra,* 433 U.S. at pp. 13-14, fn. 8 [53 L.Ed.2d at p. 550].) ▆▆ Thus real, rather than theoretical, exigencies are required before luggage may be searched without a warrant. Since no exigency required the greater intrusion in *Chadwick,* it was held to be constitutionally impermissible. (*Id.,* at p. 15 [53 L.Ed.2d at pp. 550-551].) As one United States Court of Appeals has commented, "*Chadwick* stands for the proposition that a warrantless search of personal property should be the exception and not the rule. Where, as here, the authorities are in control of the situation, they must obtain a warrant prior to searching luggage or similar personal property either on the scene or back at the stationhouse." (*United States* v. *Johnson* (5th Cir. 1979) 588 F.2d 147, 151; accord, *United States* v. *Stevie* (8th Cir. 1978) 582 F.2d 1175, 1179; *United States* v. *Schleis* (8th Cir. 1978) 582 F.2d 1166, 1172; but see *United States* v. *Finnegan* (9th Cir. 1977) 568 F.2d 637 [validating on the scene search of luggage in an automobile].)

█ As in *Chadwick,* the tote bag in the present case was searched while appellant was in custody and while the bag was under the exclusive control of police officers. Further, there were no exigent circumstances that would have justified a warrantless search of the tote bag. While an automobile in police custody may conceivably be moved or broken into, the tote bag could have been held quite secure until a warrant was obtained. Whatever delay the obtaining of a search warrant might have entailed, it would not have resulted in the loss or destruction of any evidence that might have been in the tote bag.

Respondent argues that since *Chadwick* did not involve an automobile search, that case did not in any way limit the "automobile" exception which, it is asserted, extends to any closed containers found within an automobile. Respondent points out that *Chambers* was not overruled but was reaffirmed by the court in *Chadwick.* This is true but misses the point. *Chambers* did not involve a search of luggage and stands only for the proposition that once an *automobile* has been seized, a warrantless search is not a significantly greater intrusion than immobilization. *Chadwick* explicitly stated that this is not the case with luggage. (433 U.S. at pp. 13-14 and fn. 8 [53 L.Ed.2d at pp. 549-550]; *United States* v. *Johnson, supra,* 588 F.2d at p. 153.) █ Although the government in *Chadwick* did not seek to justify the warrantless search of the footlocker under the "automobile" exception (433 U.S. at p. 11 [53 L.Ed.2d at p. 548]),[4] the logic of the *Chadwick* opinion suggests that an individual's interest in keeping private the contents of personal luggage is not lost simply because that luggage is placed in an automobile. "Every factor which the Court cites in support of its holding [in *Chadwick*] remains present whether the luggage is *inside* or *outside* an automobile." (*United States* v. *Stevie, supra,* 582 F.2d at p. 1179, original italics; *United States* v. *Johnson, supra,* 588 F.2d at p. 152.) Thus while *Chambers* may have sanctioned the warrantless search of automobiles in most cases, *Chadwick* refused to extend this exception to luggage. *Chadwick* clearly requires that a warrant be obtained once luggage is under the exclusive control of police. .

█ It is clear from *Chadwick* itself that the tote bag would not have been subject to a warrantless search if appellant had been arrested on the

---

[4]The government did argue in the trial court that the warrantless search of the footlocker could be justified under the "automobile" exception of *Chambers* v. *Maroney, supra,* 399 U.S. 42. The district court rejected this contention, and it was apparently abandoned by the government when the case was argued before the Supreme Court. (433 U.S. at pp. 5, 11 [53 L.Ed.2d at pp. 544, 548].)

street and the bag taken from his possession. The government had also contended in *Chadwick* that any property in the possession of one who is arrested is subject to a warrantless search. In rejecting this contention[5] the Supreme Court stated that "warrantless searches of luggage or other property seized at the time of an.arrest cannot be justified as incident to that arrest *either* if the 'search is remote in time or place from the arrest,' [citation], *or no exigency exists.* Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." (433 U.S. at p. 15 [53 L.Ed.2d at pp. 550-551], italics added; see also *United States* v. *Schleis, supra,* 582 F.2d at p. 1172.) Further, had appellant been arrested in his home, the tote bag could not have been searched without a warrant. (*Chimel* v. *California* (1969) 395 U.S. 752, 763 [23 L.Ed.2d 685, 694, 89 S.Ct. 2034]; see also *People* v. *Robinson* (1974) 41 Cal.App.3d 658, 669 [116 Cal.Rptr. 455].) It would be anomalous indeed if personal effects not otherwise subject to a warrantless search could be searched simply because they were found in an automobile. Given the omnipresence of automobiles in modern life, such a holding would considerably diminish individual privacy.

The principles underlying *Chadwick*—and the Fourth Amendment —are not altered because the luggage in this case was found in the course of a search of an automobile. As the Supreme Court has observed, "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." (*Coolidge* v. *New Hampshire* (1971) 403 U.S. 443, 461-462 [29 L.Ed.2d 564, 580, 91 S.Ct. 2022].)

 The cardinal principle of the Fourth Amendment is that a warrant is required *unless* some grave emergency can be shown that necessitates an immediate search without a warrant. (*McDonald* v. *United States, supra,* 335 U.S. at pp. 455-456 [93 L.Ed. at p. 158].) Further, "a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation.' " (*Mincey* v. *Arizona, supra,* 437 U.S. at p. 393 [57 L.Ed.2d at p. 300, 98 S.Ct. at p. 2414].) When those circumstances cease to exist, the exception also ceases to exist and a warrant must be obtained.

---

[5]The government also contended that because an individual has a lesser privacy interest in a footlocker than in a dwelling or a private communication, only a showing of probable cause is necessary for its warrantless search. This contention was also rejected. (433 U.S. at pp. 6-11 [53 L.Ed.2d at pp. 545-548].)

This is the rationale of *Chadwick*: "Even though on this record the issuance of a warrant by a judicial officer was reasonably predictable, a line must be drawn. In our view, *when no exigency is shown to support the need for an immediate search, the Warrant Clause places the line at the point where the property to be searched comes under the exclusive dominion of police authority.*" (433 U.S. at p. 15 [53 L.Ed.2d at p. 551], italics added.) To hold otherwise would exalt the exceptions above the rule.[6]

■ Respondent alternatively argues that the automobile was itself an "instrumentality" of the crime, since it was used in appellant's escape. Therefore, it is argued the car and its entire contents, including the tote bag, were subject to a thorough search under what is termed the "instrumentality" exception. *Chambers* v. *Maroney, supra,* 399 U.S. 42 and this court's opinions in *People* v. *Teale* (1969) 70 Cal.2d 497 [75 Cal.Rptr. 172, 450 P.2d 564], *People* v. *Laursen* (1972) 8 Cal.3d 192 [104 Cal.Rptr. 425, 501 P.2d 1145] and *People* v. *Hill* (1974) 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1] are cited in support of this position.

Respondent reads more into these cases than is there. In general, the belief that an automobile was used in the perpetration of a crime merely supplies the requisite probable cause to search the car. (See *Almeida-Sanchez* v. *United States* (1973) 413 U.S. 266, 269 [37 L.Ed.2d 596, 600, 93 S.Ct. 2535].) It does not justify its *warrantless* search. To the extent that there is a separate "instrumentality" exception under either Constitution which in any way adds to the "automobile" exception, it is inapplicable to the facts of this case.

In *People* v. *Teale, supra,* 70 Cal.2d 497, this court upheld the delayed search by a criminalist of an automobile thought to have been used in a

---

[6]In view of the principle that a warrant is required unless the circumstances dictate otherwise, it is evident that *Chadwick* did not announce a new rule of law. Therefore, no retroactivity problem is encountered in applying *Chadwick* to this case. It was the government in *Chadwick* which sought the formulation of a new rule that luggage could be searched without a warrant by analogy to the "automobile" exception. The Supreme Court declined to apply the "automobile" exception in that fashion. Instead, it held that since no exigent circumstances were shown, a warrant was required to search the footlocker under the Fourth Amendment. Thus, no new rule was announced. (See *United States* v. *Schleis, supra,* 582 F.2d at p. 1174.) *Schleis,* which had originally upheld a delayed warrantless search of a briefcase in the defendant's possession at the time of his arrest, was remanded by the Supreme Court for further consideration in light of *Chadwick.* (*Schleis* v. *United States* (1977) 433 U.S. 905 [53 L.Ed.2d 1089, 97 S.Ct. 2968].) The Supreme Court would not have done so if *Chadwick* were not to apply retroactively. (582 F.2d at p. 1172. See also *United States* v. *Stevie, supra,* 582 F.2d at p. 1178, fn. 1.)

kidnap-murder. This court reasoned that an automobile which is seized "in the reasonable belief that [it] *is itself evidence*" could be searched "for the purpose of determining its evidentiary value" on the theory that such an examination was not a search within the Fourth Amendment. (*Id.,* at p. 511, original italics.) However, the court in *Teale* was careful to distinguish between a car as a *container* of evidence and a car which *is itself evidence* of a crime. (*Id.,* at p. 511, fn. 10.) An examination of the former is clearly a search and must be justified under a recognized exception to the warrant requirement.

In subsequent cases, this court has clarified *Teale,* holding that any examination of a seized automobile *is* a search and therefore must be reasonable under the Fourth Amendment. (*Mozzetti* v. *Superior Court, supra,* 4 Cal.3d at pp. 705-706; see also *Guidi* v. *Superior Court* (1973) 10 Cal.3d 1, 18-19, fn. 19 [109 Cal.Rptr. 684, 513 P.2d 908].) Although a seizure and inspection of a vehicle thought to have been used in a kidnaping was upheld by a divided court in *North* v. *Superior Court* (1972) 8 Cal.3d 301 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155], that case, like *Teale,* principally involved a scientific examination of the interior of the car to determine whether the victim had been inside and a measurement and examination of its exterior. (See also *Cardwell* v. *Lewis, supra,* 417 U.S. 583, upholding the removal of paint and the taking of tire impressions from the exterior of a car.)

The "instrumentality" exception as advanced by the respondent would go far beyond the rationale of *Teale* and *North.* Because an automobile may be said to be "used" in the commission of virtually every offense for which it is a container of evidence, the instrumentality exception as proposed by respondent would effectively end all Fourth Amendment scrutiny of automobile searches. Such a result would be clearly counter to the many decisions of this court which carefully circumscribe the "automobile" exception. (E.g., *Wimberly* v. *Superior Court, supra,* 16 Cal.3d 557; *Mozzetti* v. *Superior Court, supra,* 4 Cal.3d 699; *People* v. *Cook* (1975) 13 Cal.3d 663 [119 Cal.Rptr. 500, 532 P.2d 148].) Moreover, for the reasons stated above, such a result, if it sanctioned the warrantless search of luggage within the exclusive control of the police, would be counter to *United States* v. *Chadwick, supra,* 433 U.S. 1. If there were any vitality to the "instrumentality" exception as it applies to automobiles or other containers of evidence, it would be applicable only to a scientific examination of the object itself, for example for fingerprints, bloodstains, or the taking of tire impressions or paint scrapings. (See *Cardwell* v. *Lewis, supra,* 417 U.S. at p. 591 [41 L.Ed.2d at p. 335].)

■ Police officers may, if they have probable cause, under certain circumstances search the interior of a car and, with further probable cause, *its trunk*. However, *the factors underlying the* "automobile" exception do not support a warrantless search of closed personal effects found within an automobile. Once a closed container comes under an officer's exclusive authority, an immediate search is no longer necessary. Thus probable cause to believe the item contains contraband or evidence of a crime can support at most the seizure of the item; but a warrant must be obtained for its search. (*United States* v. *Johnson, supra,* 588 F.2d at p. 151; *United States* v. *Stevie, supra,* 582 F.2d at p. 1180.)[7]

The holding of this case is a narrow one. It will entail no diminution of the ability of law enforcement officers to apprehend those suspected of breaking the criminal law. Where probable cause is believed to exist to search a container found within an automobile, the container may be seized and held until a magistrate determines whether a warrant may be issued for its search. Where exigent circumstances dictate an immediate search, a closed container found in an automobile may be searched without a warrant. (See, e.g., *United States* v. *Chadwick, supra,* 433 U.S. at p. 15, fn. 9 [53 L.Ed.2d at p. 551]; *United States* v. *Gaultney* (5th Cir. 1978) 581 F.2d 1137.) By requiring as a rule only the lesser intrusion of seizure and immobilization of personal effects rather than immediate search, maximum respect for individual privacy can be maintained at relatively little cost to law enforcement. An individual who prefers immediate search rather than the inconvenience of immobilization may always consent to an immediate search. (See *Chambers* v. *Maroney, supra,* 399 U.S. at p. 64 [26 L.Ed.2d at pp. 435-436], dis. opn. of Harlan, J.; see generally Williamson, *The Supreme Court, Warrantless Searches, and Exigent Circumstances* (1978) 31 Okla.L.Rev. 110, 144-147; Note, United States *v.* Chadwick *and the Lesser Intrusion Concept: The Unreasonableness of Being Reasonable* (1978) 58 B.U. L.Rev. 436, 464-468.)

The Supreme Court recently observed that "[t]he investigation of crime would always be simplified if warrants were unnecessary. But the Fourth Amendment reflects the view of those who wrote the Bill of Rights that

---

[7]There is no merit to respondent's suggestion that an individual who uses an automobile in the commission of a crime thereby forfeits any expectation of privacy in the automobile or its contents. As the Supreme Court has said in rejecting a similar contention, "it suffices here to say that this reasoning would impermissibly convict the suspect even before the evidence against him was gathered." (*Mincey* v. *Arizona, supra,* 437 U.S. at p. 391 [57 L.Ed.2d at p. 299] 98 S.Ct. at p. 2413]; see also *Michigan* v. *Tyler* (1978) 436 U.S. 499, 505-506 [56 L.Ed.2d 486, 495-496, 98 S.Ct. 1942].)

the privacy of a person's home and property may not be totally sacrificed in the name of maximum simplicity in enforcement of the criminal law. [Citation.]" (*Mincey* v. *Arizona, supra,* 437 U.S. at p. 393 [57 L.Ed.2d at p. 301, 98 S.Ct. at p. 2414].) ■ A constant tension exists between the needs of law enforcement and the right of individual privacy. The Fourth Amendment embodies our founders' resolution of that tension: the requirement that the determination of probable cause to search be made by a neutral and detached magistrate, rather than "the officer engaged in the often competitive enterprise of ferreting out crime." (*Johnson* v. *United States* (1948) 333 U.S. 10, 14 [92 L.Ed. 436, 440, 68 S.Ct. 367].) Courts must be ever watchful that the delicate balance embodied in the Fourth Amendment is maintained. "It is precisely the predictability of these pressures that counsels a resolute loyalty to constitutional safeguards." (*Almeida-Sanchez* v. *United States, supra,* 413 U.S. at p. 273 [37 L.Ed.2d at p. 603].) The balance is best maintained by a faithful adherence to the warrant requirement except where exigent circumstances dictate an exception. ■ The warrantless search of the tote bag was invalid under the Fourth Amendment.[8] ■ Since the evidence seized from the tote bag constituted a substantial part of the prosecution's case, reversal of appellant's conviction is required. (*Chapman* v. *California* (1967) 386 U.S. 18, 23-24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

The judgment is reversed.

Tobriner, J., Mosk, J., Manuel, J., and Newman, J., concurred.

Richardson, J., concurred in the result.

**CLARK, J.,** Dissenting.—The warrantless search of the bag found in the trunk of defendant's car was justified under the "automobile exception" to the warrant requirement. (*Carroll* v. *United States* (1925) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790]; *Chambers* v. *Maroney* (1970) 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975]; *United States* v. *Finnegan* (9th Cir. 1977) 568 F.2d 637.) *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476] is consistent with this conclusion.

In *Chadwick,* railroad officials in San Diego observed Machado and Leary load a footlocker onto a train bound for Boston. Their suspicions

---

[8]In light of this holding, it is not necessary to reach the other contentions raised by appellant. This opinion intimates no views on how the validity of the search in this case would be decided under the California Constitution.

were aroused when they noticed that the trunk was unusually heavy for its size, and that it was leaking talcum powder, a substance often used to mask the odor of marijuana or hashish. Because Machado matched a profile used to spot drug traffickers, the railroad officials reported these circumstances to federal agents in San Diego, who in turn relayed the information, together with detailed descriptions of Machado and the footlocker, to their counterparts in Boston.

When the footlocker arrived in Boston federal narcotics agents used a trained dog to ascertain it contained marijuana. The agents then waited until Chadwick and Machado lifted the locker into the trunk of Chadwick's car. "At that point, while the trunk of the car was still open and before the car engine had been started," the agents arrested them. At the federal building an hour and a half later, the agents, without a warrant, opened the locker and discovered marijuana. (*United States* v. *Chadwick, supra,* 433 U.S. at pp. 3-4 [53 L.Ed.2d at p. 543].)

In the federal district court, the government explained its omission to obtain a search warrant was justified under the automobile exception of *Chambers* v. *Maroney, supra,* 399 U.S. 42. Rejecting this argument on the ground that the relationship between the footlocker and Chadwick's automobile was merely coincidental, the district court suppressed the marijuana, and the court of appeals affirmed. As the majority note (*ante,* p. 419, fn. 4), the government abandoned this contention when the case was argued before the Supreme Court. "The Government does not contend that the footlocker's brief contact with Chadwick's car makes this an automobile search, but it is argued that the rationale of our automobile search cases demonstrates the reasonableness of permitting warrantless searches of luggage; the Government views such luggage as analogous *to motor vehicles for Fourth Amendment purposes.*" (433 U.S. at pp. 11-12 [53 L.Ed.2d at p. 548.)

The government's argument rested on the novel proposition that "the Fourth Amendment Warrant Clause protects only interests traditionally identified with the home." (433 U.S. at p. 6 [53 L.Ed.2d at p. 545].) "Drawing on its reading of history, the Government argues that only homes, offices, and private communications implicate interests which lie at the core of the Fourth Amendment. Accordingly, it is only in these contexts that the determination whether a search or seizure is reasonable should turn on whether a warrant has been obtained. In all other situations, the Government contends, less significant privacy values are at stake, and the reasonableness of a government intrusion should depend

solely on whether there is probable cause to believe evidence of criminal conduct is present. Where personal effects are lawfully seized outside the home on probable cause, the Government would thus regard searches without a warrant as not 'unreasonable.' " (*Id.*, at p. 7 [53 L.Ed.2d at p. 545].)

Rejecting this argument, the Supreme Court declined to extend the automobile exception to all movable personalty lawfully seized in a public place. The high court pointed out that it is the diminished expectation of privacy surrounding the automobile, rather than its mobility, which justifies a warrantless search. "The factors which diminish the privacy aspects of an automobile do not apply to respondents' footlocker," the court held. "Luggage contents are not open to public view, except as a condition to a border entry or common carrier travel; nor is luggage subject to regular inspections and official scrutiny on a continuing basis. Unlike an automobile, whose primary function is transportation, luggage is intended as a repository of personal effects. In sum, a person's expectations of privacy in personal luggage are substantially greater than in an automobile." (433 U.S. at p. 13 [53 L.Ed.2d at p. 549].)

As the Ninth Circuit Court of Appeals has recognized, "a unique fact situation was presented in *Chadwick* which controlled the outcome of the case. Had the facts been only marginally different, as Justice Blackmun pointed out in his dissenting opinion, the search would have been upheld under established exceptions to the warrant requirement. The agents could have avoided having the footlocker search held unconstitutional either by delaying the arrest for a few minutes until the car was in motion or by conducting the search at the time and place of the arrests." (*United States* v. *Finnegan* (9th Cir. 1977) 568 F.2d 637, 641, fn. omitted; accord, *United States* v. *Ochs* (2d Cir. 1979) 595 F.2d 1247.)

This point bears repetition. As Justice Blackmun emphasized in his dissenting opinion—without contradiction by the majority—*Chadwick* does *not* limit the automobile exception to the warrant requirement by holding that closed containers found in an automobile are outside the scope of that exception. To the contrary, as Justice Blackmun pointed out, "if the agents had postponed the arrest just a few minutes longer until the respondents started to drive away, then the car could have been seized, taken to the agents' office, and all its contents—including the footlocker

—searched without a warrant." (433 U.S. at pp. 22-23 [53 L.Ed.2d at pp. 555-556].) "The scope of the 'automobile search' exception to the warrant requirement extends to the contents of locked compartments, including glove compartments and trunks. [Citation.] The Courts of Appeals have construed this doctrine to include briefcases, suitcases, and footlockers inside automobiles. *United States* v. *Tramunti,* 513 F.2d 1087, 1104-1105 (CA2 1975); *United States* v. *Issod,* 508 F.[2d] 990, 993 (CA7 1974), cert. denied, 421 U.S. 916 (1975); *United States* v. *Soriano,* 497 F.2d 147 (CA5 1974) (en banc), convictions summarily aff'd *sub nom. United States* v. *Aviles,* 535 F.2d 658 (1976), cert. pending, Nos. 76-5132 and 76-5143; *United States* v. *Evans,* 481 F.2d 990, 993-994 (CA9 1973)." (*Id.,* at p. 23, fn. 4 [53 L.Ed.2d at p. 556].)

*Chadwick's* limited significance has been pointed out by the Ninth Circuit in *United States* v. *Finnegan, supra,* 568 F.2d 637. "The Supreme Court in *Chadwick* did not substitute a test of 'expectation of privacy' for probable cause. Indeed, the Court did not address the tests for, or scope of, the automobile search exception since those issues were not before it in light of the government's failure to renew on appeal its argument based on the automobile exception. Rather, *Chadwick* explicates the rationale for excepting a new class of *objects* from the usual proscription against warrantless searches. *Chadwick* lays down a rule whereby courts faced with an invitation by the government to define a new class of objects which may be searched without warrant must consider whether there is a diminished expectation of privacy with respect to that *class* of objects." (*Id.,* at p. 641.)

The warrantless search of the bag found in the trunk of defendant's car having been justified under the automobile exception to the warrant requirement, the judgment should be affirmed.

Respondent's petition for a rehearing was denied June 27, 1978.