[Crim. No. 18463. First Dist., Div. One. Jan. 28, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
AUGUSTINE DIMAS DIAZ et al., Defendants and Appellants.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Harriet Wiss Hirsch and David R. Lipson, Deputy State Public Defenders, and Paul Mansfield for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Ann K. Jensen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RACANELLI, P. J.**—In this appeal we examine the novel factual question whether Fourth Amendment protection may be rationally extended to an ordinary container for liquids seized from within a lawfully de-

tained vehicle. We conclude that even under the most compliant construction of relevant constitutional principles immunizing personal containers from warrantless searches, no reasonable expectation of privacy attaches to such a vessel or its contents. We affirm the judgment below for the reasons stated herein.

## Procedural Background

Defendants Diaz and Ralph Talamantes were duly arraigned on an information charging a violation of Health and Safety Code section 11351 (possession for sale of one-half ounce or more of a substance containing heroin); defendant Talamantes was further charged with a violation of Health and Safety Code section 11352 (transportation of heroin). Following denial of their motion to suppress based upon the transcript of the preliminary hearing, defendants pled guilty to the felony possession charge, the remaining count against defendant Talamantes being dismissed. Following judgment imposing a term of imprisonment in the state prison, both defendants filed an appeal from the denial of the suppression motion. (See Pen. Code, § 1538.5, subd. (m); Cal. Rules of Court, rule 31(d).[1])

## Facts

The unconflicting evidence disclosed in the record reveals the following: Shortly before noon of September 24, 1977, Officer Kingsley of the narcotics unit of the San Jose Police Department was engaged in surveillance from his vehicle of a residence at 1045 Delmar, awaiting the arrival of fellow officers with a warrant to search the residence which was believed to contain quantities of heroin and related paraphernalia. Within minutes Officer Kingsley observed Talamantes, whom he recognized from a recent narcotics arrest of the defendant while armed and knew to be wanted on an outstanding felony arrest warrant, exit the residence carrying an orange-colored object in his hand. After Talamantes had entered the passenger side of a parked pickup truck, the truck drove off followed by Officer Kingsley. Having radioed for assistance, Officer Kingsley followed for a distance of seven to eight miles before effecting a stop of the truck. Addressing Talamantes by name, the officer identified himself and ordered Talamantes and the owner-

---

[1] In his reply brief, defendant Diaz has effectively abandoned his challenge to the warrant search of his residence; thus, only the issue concerning "good-time/work-time" credit remains to be considered in Diaz' appeal.

operator, Roy Pacheco, to exit from the driver's side and to kneel alongside the left rear of the vehicle; the two occupants complied. Upon being informed he was under arrest, Talamantes turned and stated: "The kid doesn't know anything about it" nodding in the direction of the younger Pacheco. An ensuing pat-down search revealed a marijuana cigarette in Pacheco's shirt pocket, a misdemeanor for which the officer intended to issue a citation. (See Health & Saf. Code, § 11357, subd. (b); Pen. Code, § 853.6.) Alerted by Talamantes' voluntary disclosure, combined with the circumstances of Talamantes' earlier arrest and his emergence from the residence of a suspected heroin "connection,"[2] Officer Kingsley believed that the truck contained narcotics contraband. Fearful that such contraband would "disappear" once the truck drove off (since Pacheco had rejected a proposal to lock and leave the truck), the officer decided to undertake an immediate search. A search of the cab disclosed an orange-colored "Jack-in-the-Box" cup, with an opaque lid and protruding straw,[3] resting in plain view on the passenger seat or dashboard. As Officer Kingsley lifted the cup, it felt as though it contained solid rather than liquid contents. Removing the lid, the officer discovered four individually wrapped bags of brown-colored substance later analyzed as containing heroin with an estimated street value of $20,000. Following the discovery, Pacheco was also arrested and his truck impounded.

## Contentions

While conceding the lawfulness of the initial detention and ensuing arrest based upon the outstanding warrant, Talamantes contends that the search of the truck exceeded the permissible scope incident to an arrest,[4] and that neither probable cause nor exigent circumstances existed justifying the warrantless "search" of the Jack-in-the-Box cup. The People counter with an exchange relying upon the so-called "automobile exception," the absence of any reasonable privacy expectations in the contents of an ordinary cup and the existence of probable cause and exigent circumstances.

---

[2] That suspicion was ultimately confirmed upon execution of the search warrant later that day.

[3] From the general description supplied in the record, we may properly conclude that the cup is one of the disposable variety typically used by "fast-food" outlets in vending milkshakes and soft drinks. (See Evid. Code, §§ 451, subd. (f), 459.)

[4] Since the People do not seek to justify the search as incident to a valid arrest, we need not discuss the implications of the *Chimel* rule (*Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]) as anticipated by Talamantes.

*Validity of Warrantless Search*

*The Automobile*

■   It is now generally established that police officers are empowered under the doctrine announced in *Carroll* (*Carroll* v. *United States* (1925) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790]) and its progeny to conduct a warrantless search of the passenger compartment of a lawfully detained automobile so long as the existence of probable cause and exigent circumstances are demonstrated. (See *Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 563 [128 Cal.Rptr. 641, 547 P.2d 417]; *People* v. *Cook* (1975) 13 Cal.3d 663, 668-669 [119 Cal.Rptr. 500, 532 P.2d 148] [cert. den. 423 U.S. 870 (46 L.Ed.2d 100, 96 S.Ct. 135)]; *People* v. *Dumas* (1973) 9 Cal.3d 871, 884 [109 Cal.Rptr. 304, 512 P.2d 1208].) The rationale underlying the "automobile exception" to Fourth Amendment warrant requirements has traditionally focused upon 1) the existence of probable cause to believe the automobile contains contraband, weapons or evidence of a crime and 2) the attendant impossibility or improbability (due to its inherent mobility) of obtaining a warrant. (See *Cady* v. *Dombrowski* (1973) 413 U.S. 433 [37 L.Ed.2d 706, 93 S.Ct. 2523]; *Chambers* v. *Maroney* (1970) 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975]; *Carroll* v. *United States, supra,* 267 U.S. 132; *People* v. *Minjares* (1979) 24 Cal.3d 410, 416 [153 Cal.Rptr. 224, 591 P.2d 514], cert. den. 444 U. S. 887 [62 L.Ed.2d 117, 100 S.Ct. 181]; *Wimberly* v. *Superior Court, supra,* at p. 563; *People* v. *Dumas, supra,* at p. 884.)   ■   In considering whether the requisite probable cause existed, we review the supporting evidence to determine whether the officer possessed facts that would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search is in the particular place to be searched. (*Wimberly* v. *Superior Court, supra,* at p. 564 (and cases there cited).)   ■   If the trial court's finding of probable cause is supported by substantial evidence, we are bound to uphold it. (*People* v. *Gale* (1973) 9 Cal.3d 788, 792 [108 Cal.Rptr. 852, 511 P.2d 1204]; *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].)

■   The evidence discloses that Talamantes, the subject of an outstanding arrest warrant for a drug offense, was observed leaving a residence suspected as a center of illicit drug activities while carrying a distinctively colored object. When arrested, his voluntary disclaimer of his youthful companion's involvement in "it," though ambiguous, could

reasonably support an inference the statement was intended to exculpate the latter's involvement in present criminal activity associated with the use of the truck. (Cf. *People v. King* (1977) 72 Cal.App.3d 346, 349 [139 Cal.Rptr. 926].) Such evidence reasonably supported the trial court's implicit finding which we must respect on appeal. (*Id.* at pp. 349-350.) Given the total circumstances, it was objectively reasonable for the experienced officer to believe and strongly suspect that contraband would be found in the trunk's interior. (*People v. Hill* (1974) 12 Cal.3d 731, 747-748 [117 Cal.Rptr. 393, 528 P.2d 1].) Since Pacheco was only to be cited, his on-the-scene release would have effectively thwarted any meaningful attempt to first obtain a warrant to search the interior of the truck. Such exceptional circumstances readily justified the immediate warrantless search based upon the exigency thus presented. (*Chambers v. Maroney, supra*, 399 U.S. 42, 52 [26 L.Ed.2d 419, 428]; *People v. Cook, supra*, 13 Cal.3d 663, 669.) The truck search was constitutionally permissible.

### The Cup

Nor did the officer's resultant *seizure* of the orange-colored cup then in plain view offend constitutional safeguards. Rather, it is Talamantes' principal argument that the cup and its contents were invulnerable to a warrantless search as a protectible privacy interest in the absence of probable cause and exigent circumstances. With heavy emphasis placed upon the principles distilled from recent decisions governing the search of personal and closed containers (*Arkansas v. Sanders* (1979) 442 U.S. 753, 764, fn. 13 [61 L.Ed.2d 235, 245, 99 S.Ct. 2586]; *United States v. Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476]; *People v. Minjares, supra*, 24 Cal.3d 410, cert. den. 444 U.S. 887 [62 L.Ed.2d 117, 100 S.Ct. 181]; *People v. Pace* (1979) 92 Cal.App.3d 199 [154 Cal.Rptr. 811]), it is Talamantes' thesis that, assuming arguendo, the cup was properly seized, an examination of its enclosed contents could only be undertaken under the authority of a judicially approved warrant. In short, he contends that since the contents of the cup were not plainly visible due to the opaque quality of the lid and cup itself, a protectible privacy interest existed mandating the need for a warrant to search the "container" then under the exclusive control of the officer. In light of the facts presented, we find such reasoning artificial and unsound.

Fourth Amendment protection evolves from a legitimate expectation of privacy interests of people and their personal effects from

unreasonable government intrusions. (See *Katz* v. *United States* (1967) 389 U.S. 347, 351 [19 L.Ed.2d 576, 581, 88 S.Ct. 507]; *People* v. *Bradley* (1969) 1 Cal.3d 80, 84-86 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1100 [80 Cal.Rptr. 633, 458 P.2d 713].) In the absence of such a reasonable privacy expectation, it cannot be successfully claimed that a warrantless intrusion constitutes a "search" subject to constitutional challenge. (See *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 634 [108 Cal.Rptr. 585, 511 P.2d 33].) In distinguishing the concept of a reduced privacy expectation underpinning the automobile exception, the *Chadwick* majority reasoned that such protection rationally extended to personal luggage *intended as a repository for personal effects* involving privacy expectations of a substantially greater magnitude. (*United States* v. *Chadwick, supra*, 433 U.S. 1, 13 [53 L.Ed.2d 538, 549]; accord *Arkansas* v. *Sanders, supra*, 442 U. S. 753, 764, fn. 13 [61 L.Ed.2d 235, 245]; *People* v. *Minjares, supra*, 24 Cal.3d 410, cert. den. 444 U.S. 887 [62 L.Ed.2d 117, 100 S.Ct. 181].) Logically, that protection was extended to similarly include personal closed containers discovered during a trunk search. (See *People* v. *Dalton* (1979) 24 Cal.3d 850 [157 Cal.Rptr. 497, 598 P.2d 467].)

But implicit in the Supreme Court decisions condemning warrantless searches of closed personal effects once within the exclusive possession of the officer, is the critical determination that the very *nature* of the object seized supported a rational belief or expectation that its contents were to be free from uninvited inspection and that such expectation was manifestly reasonable. Clearly, while personal luggage and a variety of closed containers may meet the requisite test of reasonableness, not *every* object serving the function of a closed receptacle will automatically fall within the ambit of constitutional protection simply because its physical form forecloses an open or public examination. (Cf. *Arkansas* v. *Sanders, supra*, 442 U.S. 753, 764, fn. 13 [61 L.Ed.2d 235, 245; *United States* v. *Neumann* (8th Cir. 1978) 585 F.2d 355 [no protectible privacy interest in an unsecured department store box in plain view in automobile].) As one commentator has noted, whether in a given factual instance a reasonable privacy expectation may be said to exist under the *Katz* standard of justifiable reliance, is largely a matter of value judgment. (See Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn. L.Rev. 349, 402.) Where the line is to be drawn in deciding whether important Fourth Amendment privacy interests are at stake in any given case is perplexing at best. (See Blackman, J., dis. opn. *Arkansas* v. *Sanders, supra*.) ██ Yet in the totality of the cir-

cumstances here presented, there is no need for a protracted exegesis of Fourth Amendment law in order to reasonably conclude, as did the trial court, that an ordinary waxed paper or cardboard cup designed to contain a potable refreshment can not—except perhaps under the most unusual factual setting—qualify as the kind of repository of personal effects entitled to constitutional protection.[5] Wherever the line is drawn, such an impersonal container of transient purpose falls far short of the mark beyond which constitutionally enshrined protection must be afforded.

In conclusion, we hold that a commonplace soft drink cup—without more—possesses none of the indicia of a repository for personal effects to which a reasonable expectation of privacy interest attaches. Thus, the officer's inspection of its contents, otherwise reasonable in nature, was not a "search" subject to Fourth Amendment constraints.

In view of our determination, it is unnecessary to discuss the People's remaining contention offered to justify the challenged search.

### Good-time/Work-time Credits

Both defendants seek good-time/work-time credit for the time spent in presentence custody, an issue presently before the California Supreme Court in *People v. Sage* (Crim. 20997), *People v. Brown* (Crim. 20998), *In re Davis* (Crim. 20999), *People v. Galloway* (Crim. 21182) and *In re Ferrier* (Crim. 21183). The determination of entitlement to those credits should be deferred pending that court's decision(s). (*People v. Wende* (1979) 25 Cal.3d 436, 443, fn. 4 [158 Cal.Rptr. 839, 600 P.2d 1071].)

However, we believe that the ends of justice will be served if we now order such credits as might be irretrievably lost if we denied them. We therefore hold that if the decisions above have not been finally filed by 90 days prior to the release date to which the defendants would otherwise be entitled with the good-time/work-time credits, each shall then have the right to file a petition for habeas corpus in the appropriate

---

[5]Parenthetically, we are not persuaded that a common "lunchbox" would uniformly meet the description of a protected repository of "personal effects." For this and other reasons we have outlined on an earlier occasion (see *People v. Flores* (1979) 100 Cal.App.3d 221, 232, fn. 5 [160 Cal.Rptr. 839]), we find the holding in *People v. Pace, supra*, 92 Cal.App.3d 199 unconvincing.

superior court which shall issue its order to show cause and make a factual determination whether such defendant is entitled to such credits; and, if proved, to allow same, subject to any intervening decision by the Supreme Court in the cases cited above. (*In re Hochberg* (1970) 2 Cal.3d 870, 875, fn. 4 [87 Cal.Rptr. 681, 471 P.2d 1].)

Judgment affirmed.

Elkington, J., and Newsom, J., concurred.

The petition of appellant Talamantes for a hearing by the Supreme Court was denied March 27, 1980.