[Crim. No. 23338. First Dist., Div. Three. Mar. 25, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
RONNIE GEE, Defendant and Appellant.

**COUNSEL**

Jeffry Glenn and Berman & Glenn for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Michael D. Wellington and Robert B. Shaw, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BARRY-DEAL, J.**—Appellant Ronnie Gee was charged with burglary, robbery, and false imprisonment. After denial of his motion to suppress evidence, he entered a plea of nolo contendere to burglary, and the other charges were dismissed. The court found him guilty and sentenced him to two years imprisonment.       This appeal followed.[1] We hold that the trial court properly denied the suppression motion. Accordingly, we affirm the judgment.

---

[1]Denial of a motion under Penal Code section 1538.5 is reviewable on appeal from a judgment of conviction following a plea of nolo contendere. (*People* v. *West* (1970) 3 Cal.3d 595, 601 [91 Cal.Rptr. 385, 477 P.2d 409].)

FACTS

The evidence adduced at the preliminary hearing showed the following. On September 10, 1980, at about 1:30 p.m., the victim, Mary Lois Taylor, was bathing her dog in the bathroom of her home on Club Drive in San Carlos. A black man grabbed her, threw her on the bed in the adjoining master bedroom, put a pillowcase over her head, tied her up with a lamp cord, threatened to kill her, and fled with jewelry and money. Ms. Taylor did not get a good look at her assailant. She described him to the police as 22, 5 feet 10 inches tall, with a possible modified Afro hair style, and possibly with light clothing on top and dark clothing on the bottom.

June Baba was driving in the area of Bayview and Club Drive on September 10, 1980, at about 2:10 p.m. A black man attracted her attention because he "was walking rapidly from the center of the road going toward a car and had both hands in his pockets and to me it just didn't look right."[2] He got into a car, made a U-turn, and drove down the street. She followed in her car and took down his license number.

As she was returning from the store Ms. Baba noticed a police car in the vicinity (within one-half block) where she had seen the man about an hour before. She stopped and gave Officer Antone the following information, which he recorded in a police report that day. As she drove onto Club Drive she saw a black man, 18 to 20 years old, thin build, medium height, wearing brown corduroy pants and possibly a brown or tan shirt, running southbound up the hill. He appeared jumpy, and she thought he looked suspicious. He got into a black-over-white American-made hardtop and drove south, made a U-turn, and drove north on Club Drive.

The man was seen by Ms. Baba about one-half block from Ms. Taylor's residence and was running in a direction away from it.

Later that day the car which Ms. Baba had described was located in East Palo Alto in front of appellant's residence. Detective Cross of the San Carlos police transported Ms. Taylor and Ms. Baba there, where the latter made a positive identification of the vehicle.

---

[2]On cross-examination Ms. Baba stated that although the area in question was predominantly white it was not unusual to see black people there in the middle of the day.

At about 10 p.m. Sergeant Cushnie of the San Mateo Sheriff's office went to the location (2216 Dumbarton) to contact the owner of the vehicle. He knocked on the door; appellant came out wearing pants but no shirt or shoes. Sergeant Cushnie asked him if he was the owner of the vehicle; he said, yes, it was his car. Sergeant Cushnie told appellant the vehicle was suspected of being involved in an incident and asked if he could talk to him about the car. Appellant said just a moment, went into the house, put on his shoes and a jacket or shirt, and walked out with the sergeant to the vehicle. Sergeant Cushnie then introduced appellant to Detective Cross, telling appellant, "... since he is investigating the crime, possibly you should talk to him because he has all of the specifics in [*sic*] it."

Sergeant Cushnie stated that before he knocked on the door of the residence Detective Cross had told him that the car was to be impounded. His purpose in knocking on the door was to inform the owner of this fact, not to detain him.

Detective Cross testified that after being introduced to appellant, "I told him, I said, we were going to impound his car, and I said, I asked for permission to search it, and he advised me, 'You can search it, but I'd rather you not take it.'" Cross said the area was too dark and that the car was going to be towed to the police station. He again asked permission to search the car, which appellant gave again. Appellant never gave the officers permission to take his car. It was impounded, sealed, and searched the next morning.

After telling appellant that the car was to be impounded, Detective Cross asked him about his use or control of the car that day. Appellant said that nobody drives his car except himself, that he had been in possession of it all day, and, in response to a question, that he could have been in San Carlos that day.

A pair of gloves found in the car and the pillowcase at the scene of the crime both had fibers on them which were indistinguishable from one another.

Other relevant facts are developed in this discussion.

Discussion

*Scope of Review*

The magistrate denied appellant's Penal Code section 1538.5 motion because he found consent to search. This finding is irrelevant for our purposes. ■ Under Penal Code section 1538.5, subdivision (i), the hearing on the motion to suppress in superior court is "de novo," that is, a full evidentiary hearing and not a review of prior findings; and this is true despite the fact that the matter is submitted to the superior court on the preliminary hearing transcript with no additional evidence being presented. (E.g., *People* v. *Harrington* (1970) 2 Cal.3d 991, 995-997 [88 Cal.Rptr. 161, 471 P.2d 961].)

The superior court upheld the search on two bases—that appellant consented to it and that the vehicle was an instrumentality of the crime. ■ On appeal, all presumptions favor a proper exercise of the superior court's power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence, and draw factual inferences. The trial court's findings, whether express or implied, must be upheld if they are supported by substantial evidence. (*People* v. *Superior Court* (*Keithley*) (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585].) "This rule, however, is not applicable in cases involving searches and seizures in which the facts bearing on the legality of the search are undisputed and establish as a matter of law that the evidence is or is not admissible. [Citations.]" (*People* v. *Superior Court* (*Mahle*) (1970) 3 Cal.App.3d 476, 488 [83 Cal.Rptr. 771].)

*Detention*

Sergeant Cushnie testified that when he met appellant at the door of his home, appellant was neither under arrest, nor was Cushnie attempting to detain him; appellant was free to leave. He also testified that his purpose in going to appellant's residence was to inform him of the impoundment of his car, not to investigate his possible involvement in the crime. Detective Cross testified that during his conversation with appellant the latter was not "in custody." He conceded, however, that one of his purposes was to have the victim look at appellant to make a field identification.

Appellant argued below that he was the subject of an improper detention. The threshold issue is whether he was detained, i.e., seized within the meaning of the federal and state constitutional guarantees against unreasonable seizures.

"Courts have broadly defined the term detention. The United States Supreme Court has held that 'whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person' within the meaning of the Fourth Amendment. (*Terry* v. *Ohio* (1968) 392 U.S. 1, 16 . . . .) In California, courts have found a 'clear' detention in a situation where an officer 'went to the telephone booth [the defendant was using], and asked defendant his name and several questions.' (*People* v. *Moore* (1968) 69 Cal.2d 674, 678, 683 . . . .) Most recently, this [Supreme] court added a separate, new test. ▪ A detention also occurs whenever an officer accosts an individual on suspicion that the person 'may be personally involved in some criminal activity. . . .' (*In re Tony C.* (1978) 21 Cal.3d 888, 895 . . . .)" (*People* v. *Bower* (1979) 24 Cal.3d 638, 643 [156 Cal.Rptr. 856, 597 P.2d 115].)

It is clear that appellant was detained from the moment he answered Sergeant Cushnie's knock on the door. Although the peace officers testified that appellant was not under arrest or in custody, it is undisputed that one of their purposes in going to his home was to attempt to have the victim and the other witness make a field identification of the owner of the suspect vehicle. It is therefore beyond question that appellant was suspected of being involved in criminal activity and therefore was detained within the meaning of the rule set forth in *In re Tony C.* (1978) 21 Cal.3d 888, 895 [148 Cal.Rptr. 366, 582 P.2d 957]: "If the individual is stopped or detained because the officer suspects he may be personally involved in some criminal activity, his Fourth Amendment rights are implicated and he is entitled to the safeguards of the rules set forth above. But similar safeguards are not required if the officer acts for other proper reasons. Such reasons are obviously too many and varied to recite, but they may be grouped in at least two general categories: (1) the officer may wish to question the person not as a suspect but merely as a witness to a crime, or (2) the officer may be engaged in one of 'those innumerable miscellaneous tasks which society calls upon police to do which have nothing to do with the detection of crime' (*Batts* v. *Superior Court* (1972) *supra*, 23 Cal.App.3d 435, 438 [100 Cal.Rptr. 181]), such as giving aid to persons in distress, mediating domestic quarrels, assisting the elderly or the disabled, furnishing traffic advice or directions, and generally preserving the peace and protecting persons from harm or annoyance. (See *id.*, at pp. 438-439.)[3]" Footnote 3 of the quoted passage provides: "By analogy to the rule in the case of warrantless arrests and searches (see *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 . . .), if the prosecution contends that

a stop or detention was for a purpose other than to investigate the defendant as a suspect in criminal activity, it has the burden of proof on the issue."

Having determined that appellant was detained, we must examine whether the detention was lawful.

"[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to the crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation], to suspect the same criminal activity and the same involvement by the person in question. The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. [Citation.]" (*In re Tony C., supra*, 21 Cal.3d 888, 893, fn. omitted.)

█ It seems that both officers subjectively entertained a suspicion that appellant was involved in criminal activity, since both were aware of the pending attempt at a field identification. The trial court's implied finding that their suspicion was reasonable is supported by the evidence. A person using appellant's car was seen near the crime scene at about the time of the crime, and a witness thought he was suspicious because his actions "just didn't look right." Furthermore, appellant matched the description of the perpetrator of the crime and of the person seen using the car. In sum, the witness' report led the officers to subjectively entertain a suspicion which was objectively reasonable. Thus, the detention should be upheld. (*In re Tony C., supra*, 21 Cal.3d 888, 893.)

### Auto Search

█ A warrantless search of an automobile must be supported by probable cause and exigent circumstances. (See, e.g., *People v. Johnson* (1981) 30 Cal.3d 444, 450 [179 Cal.Rptr. 209, 637 P.2d 676]; *People v. Ruggles* (1981) 125 Cal.App.3d 473, 482 [178 Cal.Rptr. 231]; but see *People v. Weston* (1981) 114 Cal.App.3d 764, 773-776 [170 Cal.Rptr. 856].) Both were present here. Probable cause existed in that

the officers were "aware of facts that would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search is in the particular place to be searched. [Citations.]" (*Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 564 [128 Cal.Rptr. 641, 547 P.2d 417].) That is, the officers had reason to believe that appellant's car had been used as the getaway vehicle from the Taylor robbery and that it still contained the fruits of that crime. An exigency existed in that appellant, who was not yet under arrest, "presented a risk to the continued preservation of any compromising evidence in the car, necessitating an immediate search." (*People* v. *Johnson, supra*, 30 Cal.3d at p. 451.)

### Consent

The trial court found that appellant consented to the search. ▇ Voluntariness of consent is a question of fact to be determined by the trial court in light of the circumstances. It was the People's burden to prove that appellant's consent "was the product of his free will and not a mere submission to an express or implied assertion of authority. [Citation.]" (*People* v. *James* (1977) 19 Cal.3d 99, 106 [137 Cal.Rptr. 447, 561 P.2d 1135].) They met this burden. (See, e.g., *People* v. *Wilks* (1978) 21 Cal.3d 460, 467 [146 Cal.Rptr. 364, 578 P.2d 1369]; *People* v. *James, supra*, 19 Cal.3d 99.) Given that the officers had probable cause to search the car and exigent circumstances existed, their statement to appellant that they were going to impound the car was proper. (*Chambers* v. *Maroney* (1970) 399 U.S. 42, 51-52 [26 L.Ed.2d 419, 428-429, 90 S.Ct. 1975].) The trial court's finding that appellant then consented to the search was supported by the evidence and will not be disturbed on appeal.

### Instrumentality

▇ We note that the trial court's finding that the search of the vehicle was valid because it was an instrumentality of the crime was incorrect. In *People* v. *Minjares* (1979) 24 Cal.3d 410, 421 [153 Cal.Rptr. 224, 591 P.2d 514], the Supreme Court stated: "In general, the belief that an automobile was used in the perpetration of a crime merely supplies the requisite probable cause to search the car. [Citation.] It does not justify its *warrantless* search. To the extent that there is a separate 'instrumentality' exception under either Constitution which in any way adds to the 'automobile' exception, it is inapplicable to the facts of this case." The court went on to explain that in the leading "instrumental-

ity" cases (*People* v. *Teale* (1969) 70 Cal.2d 497 [75 Cal.Rptr. 172, 450 P.2d 564]; *North* v. *Superior Court* (1972) 8 Cal.3d 301 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155]) the car itself was evidence, and the so-called instrumentality exception applied to permit scientific examination. (In *Teale* the victim had been shot in the car; in *North* the kidnap victim had been pulled into the car.)

Application of the instrumentality exception in the case at bench, as in *Minjares*, "would go far beyond the rationale of *Teale* and *North*. Because an automobile may be said to be 'used' in the commission of virtually every offense for which it is a container of evidence, the instrumentality exception as proposed by respondent would effectively end all Fourth Amendment scrutiny of automobile searches. Such a result would be clearly counter to the many decisions of this [Supreme] court which carefully circumscribe the 'automobile' exception. [Citations.]" (*People* v. *Minjares, supra*, 24 Cal.3d at p. 422.)

### CONCLUSION

The trial court did not err in denying appellant's motion to suppress evidence.

The judgment is affirmed.

White, P. J., and Scott, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 20, 1982.