[Crim. No. 11523. Fourth Dist., Div. One. July 10, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL HAROLD MURPHY, Defendant and Appellant.

**COUNSEL**

Michael Sideman, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Richard D. Garske and Patricia D. Benke, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HAMRICK, J.\***—Defendant Michael Harold Murphy was convicted in superior court of possessing a controlled substance (Health & Saf.

---

*Assigned by the Chairperson of the Judicial Council.

Code, § 11377, subd. (a)) based upon a negotiated plea of guilty following a denial of his motion to suppress evidence pursuant to Penal Code section 1538.5. Imposition of sentence was suspended and Murphy was placed on probation for three years. Murphy appeals his conviction contending the court erred in refusing to suppress the contraband which was found on his person pursuant to a search by the arresting officer.

## FACTS

At approximately 1:30 a.m. on February 28, 1979, San Diego Police Officer Ray Bowling was on duty when he saw a Plymouth station wagon pull out of a downtown parking lot and go north on Third Avenue. He noticed the station wagon did not have a front license plate and the rear Massachusetts license plate did not have a current validation sticker. Bowling followed the station wagon for a few blocks while he ran a radio check to see if the vehicle was reported as stolen. He learned it was not. When the station wagon turned onto E Street, Bowling stopped it. Upon request, the driver, Murphy, produced a valid Nevada driver's license; however, he was unable to find the vehicle registration card. When he was asked who owned the vehicle, Murphy stated it belonged to a friend of his girl friend, but he did not know the name of this person.

Because the vehicle was an out-of-state vehicle, not currently registered and Murphy had a Nevada driver's license, Bowling decided to run a warrant check on Murphy. The warrant check took only a few minutes, not more than five minutes, and revealed an outstanding warrant for Murphy with bail set at $75 on a dangerous drug possession charge. Bowling asked Murphy if he had $75 to pay the bail, and when Murphy said no, he was arrested. The arrest was followed by a search which produced the unlawful contraband.

Murphy contends the detention for purposes of a warrant check exceeded the permissible time limit established by the California Supreme Court in *People* v. *McGaughran* (1979) 25 Cal.3d 577 [159 Cal.Rptr. 191, 601 P.2d 207]. In its original opinion issued in October 1978, the Supreme Court in *McGaughran* disapproved, on constitutional grounds, *any* detention of a motorist for the purpose of running a warrant check unless the officer had independent cause, objectively measured, to suspect the driver had outstanding warrants against him.

That original opinion was vacated on January 11, 1979,[1] when the Supreme Court granted a rehearing.

■ The granting of a rehearing by the Supreme Court has the effect of vacating the previous opinion and puts the case in the same position as if it had never been decided or submitted (5 Cal.Jur.3d., Appellate Review, § 425; *In re Jessup* (1889) 81 Cal. 408 [21 P. 976, 22 P. 742, 1028]). The original opinion is no longer the opinion of the court unless it is readopted in the following opinion after rehearing (*Poppe* v. *Athearn* (1872) 42 Cal. 606). ■ Therefore, the legality of Officer Bowling's conduct must be viewed by the rules established by other California court decisions in effect at the time of the incident on February 28, 1979. The California decisions in effect at that time held that warrant checks on motorists were permissible as a routine law enforcement procedure if they could be completed within a "reasonable" period of time under the circumstances of the particular case. (*People* v. *Gilliam* (1974) 41 Cal.App.3d 181, 188 [116 Cal.Rptr. 317]; *People* v. *Bremmer* (1973) 30 Cal.App.3d 1058, 1061-1062 [106 Cal.Rptr. 797]; *People* v. *Brown* (1969) 272 Cal.App.2d 448, 450 [77 Cal.Rptr. 438]; and *People* v. *Elliott* (1960) 186 Cal.App.2d 185, 189 [8 Cal.Rptr. 716].) Pursuant to the holdings of these cases, the detention of Murphy for not more than five minutes would be considered reasonable and, therefore, lawful.

On October 25, 1979, eight months after Murphy's detention and arrest, the second opinion in *McGaughran, supra,* 25 Cal.3d 577, was issued. In this second opinion, the court follows the existing case law that warrant checks may be made as a matter of routine law enforcement procedure, but establishes a specific time limit within which such warrant checks can be made. The court held the warrant check must be completed within the period of time necessary for the officer to discharge his ordinary duties incurred by virtue of the traffic stop. That period of time necessarily includes the time required to write out the citation and obtain the offender's promise to appear or to warn him against committing future similar violations and release him without issuance of a citation. It may also include time for examination of the motorist's driver's license and the registration card for the vehicle (*People* v. *McGaughran, supra,* at p. 584), and, as stated in footnote 6 on pages 584 to 585, "...to the foregoing period of time may lawfully be added the few moments necessary for the officer to return to his vehicle

[1]The first opinion was vacated one month and eighteen days before the arrest of Murphy in this case.

with the driver's identification and initiate the warrant check by use of radio or computer terminal."

To the extent the second opinion in *McGaughran* announces a new rule prescribing a maximum time limit for the duration of a detention for routine warrant checks, it would not apply to this case unless given retroactive effect.

The test for retroactive application of a new rule consists of three considerations: (1) The purpose to be served by the new rule; (2) The extent of reliance by law enforcement authorities on the former rule; and (3) The effect on the administration of justice of a retroactive application of the new rule. (*Stovall* v. *Denno* (1967) 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1203-1204, 87 S.Ct. 1967, 1970]; *Linkletter* v. *Walker* (1965) 381 U.S. 618, 637 [14 L.Ed.2d 601, 613, 85 S.Ct. 1731, 1742].) Since the purpose to be served by the new rule is to prevent unreasonable detentions, this purpose would not be served by retroactive application to past conduct as in this case. Also, there has been a good faith reliance by law enforcement personnel on prior California court decisions allowing warrant check detentions if conducted within "brief" or "reasonable periods" of time. Although there might not be any effect on the administration of justice by retroactive application, the other considerations are persuasive in favor of not giving *McGaughran* retroactive effect.

Even if *McGaughran's* second opinion is given retroactive application, Murphy's detention was still within the Supreme Court's established minimum time frame and, therefore, permissible.

Judgment affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.