[Crim. No. 20111. First Dist., Div. Four. Sept. 5, 1980.]

THE PEOPLE, Plaintiff and Appellant, v.
ALBERT RAYMOND SILVEY, JR., Defendant and Respondent.

68

**COUNSEL**

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, John T. Murphy, Clifford K. Thompson, Jr., and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Appellant.

James C. Hooley, Public Defender, and Scott Spear, Assistant Public Defender, for Defendant and Respondent.

**OPINION**

**RATTIGAN, Acting P. J.**—After he had been held to answer at a preliminary examination, respondent Albert Raymond Silvey, Jr., was charged by information with possession of phencyclidine (PCP) for sale in violation of Health and Safety Code section 11378.5. He moved for

an order setting aside the information, pursuant to Penal Code section 995, contending that PCP received in evidence at the preliminary examination had been unlawfully seized by a police officer. The court granted his motion and made an order dismissing the information. The People appeal from the order of dismissal.

The record of the preliminary examination supports the following recitals: Alameda County Deputy Sheriff Barnhill stopped respondent on a highway for speeding and driving erratically. When the officer approached respondent's automobile, he saw a marijuana cigarette holder protruding from the dashboard. Respondent had difficulty removing his driver's license from his wallet, his movements were very slow and jerky, his eyes were droopy and bloodshot, and saliva was caked at the corners of his mouth. Deputy Barnhill inferred from respondent's appearance that he was under the influence of PCP and asked him to step out of the car.

Respondent leaned back in the seat, removed a metal container from the center armrest, and put it in the back of his pants. When he emerged from the car, Deputy Barnhill "retrieved" the container and handed it to his partner. The officer then arrested and handcuffed respondent, placed him in the back seat of the police vehicle, returned to the front seat of the vehicle, and opened the container. It contained 2.53 grams of PCP.

In moving to dismiss the information, respondent argued that the search of the metal container was unlawful because the search was warrantless and lacked probable cause. The Attorney General contends that the court erred when it granted the motion because Deputy Barnhill was authorized to search the container incident to respondent's arrest.

The United States Supreme Court narrowed the scope of a lawful warrantless search incident to arrest in *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476], in which officers searched a 200-pound locked footlocker taken from the trunk of an automobile after the defendants arrest and seizure of the vehicle. (*Id.,* at pp. 4-5 [53 L.Ed.2d at pp. 543-544].) The court held that "...warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the 'search is remote in time or place from the arrest' [citation], or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the ar-

restee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, *a search of that property is no longer an incident of the arrest.*" (*Id.*, at p. 15 [53 L.Ed.2d at pp. 550-551] [italics added; fn. omitted].)

The Attorney General argues that *Chadwick* does not proscribe the warrantless search of property "immediately associated" with the arrestee at the time of his arrest. Respondent contends that *Chadwick* and its progeny[1] proscribe a warrantless search of a closed container which has been brought within the exclusive control of the police.

The *Chadwick* court distinguished between searches of the person incident to arrest and searches of "personal property not immediately associated with the person of the arrestee." The court held that, absent exigent circumstances, a search of the latter type requires a warrant. The rationale for this holding is equally applicable to a search incident to an arrest. ■ The purpose of a search incident to an arrest is to deprive a suspect of access to a weapon and prevent concealment or destruction of evidence. (*United States* v. *Chadwick, supra,* 433 U.S. 1 at p. 14 [53 L.Ed.2d 538 at p. 550].) If property immediately associated with the arrestee's person is safely reduced to the officers' exclusive control, the danger that justifies the warrantless search no longer exists. The justification for warrantless searches of property immediately associated with the person, as well as of property not immediately associated with the person, is the danger that the arrestee may gain access to a weapon or contraband. If safe reduction of the latter type of property to the exclusive control of police officers necessitates the obtaining of a warrant by eliminating the justification for a warrantless search, no logical reason exists for treating the former type of property any differently.

In *People* v. *Minjares* (1979) 24 Cal.3d 410 [153 Cal.Rptr. 224, 591 P.2d 514], the California Supreme Court held that the warrantless search of a zippered tote bag found in the trunk of the defendant's automobile, after his arrest, was unlawful for want of justifying exigent circumstances. The court also quoted the two sentences from *Chadwick* discussed above and stated: "It is clear from *Chadwick* itself that the tote bag would not have been subject to a warrantless search if appel-

---

[1]See *Arkansas* v. *Sanders* (1979) 442 U.S. 753 [61 L.Ed.2d 235, 99 S.Ct. 2586]; *People* v. *Dalton* (1979) 24 Cal.3d 850 [157 Cal.Rptr. 497, 598 P.2d 467], cert. den. 445 U.S. 946 [63 L.Ed.2d 781, 100 S.Ct. 1345]; *People* v. *Minjares* (1979) 24 Cal.3d

lant had been arrested on the street and the bag taken from his possession." (*People* v. *Minjares, supra,* at pp. 419-420.) It is unclear whether the court construed *Chadwick* as implicitly proscribing warrantless searches of closed containers immediately associated with the person of an arrestee in the absence of exigent circumstances, or whether the court considered the zippered tote bag not to be immediately associated with the defendant. The former construction, however, would appear to be inevitable by way of consistent reasoning. ,

■ The warrantless search of respondent's metal container was accordingly unlawful, regardless of its relationship to respondent's person, because Deputy Barnhill had safely reduced it to his exclusive control.[2] The trial court did not err in granting respondent's motion.

The order of dismissal is affirmed.

Poché, J., concurred.

**CHRISTIAN, J.**—I dissent.

Application of the doctrines discussed by the majority is somewhat clouded by the statement in *United States* v. *Chadwick* (1977) 433 U.S. 1, 15 [53 L.Ed.2d 538, 550-551, 97 S.Ct. 2476], that "warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the 'search is remote in time or place from the arrest,' [citation] or no exigency exists." Taken out of context, this statement does suggest that *any* property seized from an arrestee and safely reduced to the exclusive control of police officers is outside the scope of a lawful warrantless incidental search. The context in which this statement appears, however, makes clear that the holding of *Chadwick* is not to be so broadly construed. The above quoted sentence is followed and explained by the statement that "luggage or other personal property *not immediately associated with the person of the arrestee*" is outside the scope of a search incident to arrest if safely reduced to the officer's exclusive control. (*Id.* [53 L.Ed.2d at p. 551]; italics added.) Additionally, in the same paragraph the court stated the federal rule that warrantless searches of an arrestee's person and the area within his immediate control may be conducted without additional justification. (*Id.,* at pp. 14-15 [53 L.Ed.2d

410 [153 Cal.Rptr. 224, 591 P.2d 514], cert. den. 444 U.S. 887 [62 L.Ed.2d 117, 100 S.Ct. 181].

[2]The "accelerated booking search" theory advanced in the dissent was not raised below, the People have not urged it on their appeal, and the record does not support its application in any event.

at pp. 550-551], citing *United States* v. *Robinson* (1973) 414 U.S. 218 [38 L.Ed.2d 427, 94 S.Ct. 467].)

The rule of *Chadwick* and its progeny is thus limited to searches of personal property not immediately associated with the person of the arrestee. The court in *Chadwick* reaffirmed the viability of existing standards for searches of personal property that *is* immediately associated with the arrestee's person, i.e., searches of the person incident to arrest. Consistent with this view, the California Supreme Court in *People* v. *Minjares* (1979) 24 Cal.3d 410 [153 Cal.Rptr. 224, 591 P.2d 514], cert. den. 444 U.S. 887 [62 L.Ed.2d 117, 100 S.Ct. 181], holding that the warrantless search of a zippered tote bag found in the defendant's car trunk after his arrest was unlawful for want of justifying exigent circumstances, quoted the two sentences from *Chadwick* discussed above and stated in dictum: "It is clear from *Chadwick* itself that the tote bag would not have been subject to a warrantless search if appellant had been arrested on the street and the bag taken from his possession." (*Id.*, at pp. 419-420.) The court perhaps considered that the zippered tote bag would not have been immediately associated with the defendant. The key question in the present case is thus whether respondent's metal container was immediately associated with his person at the time it was seized.

In fact, the metal container was removed from respondent's clothing; therefore it was without doubt immediately associated with his person. As one authority states, "A search is deemed to be 'of a person' if it involves an exploration into an individual's clothing, including a further search within small containers, such as wallets, cigarette boxes and the like, which are found in or about such clothing." (2 La Fave, Search and Seizure, § 5.5, at p. 347.) Thus, in *United States* v. *Robinson, supra*, 414 U.S. 218, at pp. 223, 236 [38 L.Ed.2d 427, at pp. 433-434, 441], a cigarette package found in the arrestee's coat pocket was within the scope of a lawful incidental search of the person. By contrast, a search of items which "do not have this intimate a connection with a person" requires a warrant or exigent circumstances justifying the warrantless search. (2 La Fave, Search and Seizure, § 5.5, at p. 347.) The legality of the search of respondent's metal container is therefore to be determined according to standards for searches of the person incident to arrest.

Under *federal* law a full search of the person incident to a lawful custodial arrest requires no justification other than the arrest: the full

search of the person "is not only an exception to the warrant require-
ment of the Fourth Amendment, but is also a 'reasonable' search under
that Amendment." (*United States* v. *Robinson, supra,* 414 U.S. 218,
235 [38 L.Ed.2d 427, 441].) California courts, however, have adhered
to more stringent, independent state standards. (Cal. Const., art. I,
§ 13.) The California Supreme Court has determined the permissible
scope of full searches of arrestees according to "the possible disposition
of the arrest, i.e., whether the arrestee is to be cited and immediately
released, or taken before a magistrate or other official and given the op-
portunity to post bail, or booked and incarcerated....[A] full body
search incident to arrest is impermissible when the person is arrested
for an offense for which he will merely be cited or released on bail."
(*People* v. *Maher* (1976) 17 Cal.3d 196, 199 [130 Cal.Rptr. 508, 550
P.2d 1044].) Thus, the California Supreme Court has prohibited full
body searches incident to the arrest of persons for public inebriation
(Pen. Code, § 647, subd. (f)) because an empirical study of law en-
forcement practices revealed that release of the public inebriate without
incarceration is a readily available and sometimes standard practice.
(*People* v. *Longwill* (1975) 14 Cal.3d 943, 946-948 [123 Cal.Rptr. 297,
538 P.2d 753].) If, however, the arrestee is to be booked and incarcerat-
ed, a full search is permissible as an "accelerated booking search."
Because a full custody search would be permissible at the station house
prior to booking, a full search in the field would not be a significantly
greater intrusion. (*People* v. *Barajas* (1978) 81 Cal.App.3d 999,
1008-1009 [147 Cal.Rptr. 195]; see *People* v. *Maher, supra,* 17 Cal.3d
at p. 199; *People* v. *Longwill, supra,* 14 Cal.3d 943, 948.)

Where a court is not presented with helpful empirical data, it may be
difficult to determine the likelihood that the suspect will be booked and
incarcerated. Courts of Appeal have found a likelihood of booking and
incarceration on the basis that the offense for which the person was ar-
rested was a felony (*People* v. *Barajas, supra,* 81 Cal.App.3d 999,
1009), that the sentence prescribed for the offense was severe (*People* v.
*Rich* (1977) 72 Cal.App.3d 115, 126 [139 Cal.Rptr. 819] [mandatory
90-day jail sentence for possession of specified controlled substances
(Health & Saf. Code, § 11550)]), or that booking and incarceration
were necessary to insure the availability of vital evidence such as could
be obtained by urine or other appropriate tests. (*Id.*)

After Deputy Barnhill stopped respondent's automobile, he deter-
mined that respondent was under the influence of PCP and arrested
him. Driving a vehicle under the influence of a drug is not a felony

(Veh. Code, § 23102), but the punishment is relatively severe: a first offender is punishable, inter alia, by imprisonment for not less than 48 hours. (Cf. *People* v. *Knutson* (1976) 60 Cal.App.3d 856, 867 [131 Cal.Rptr. 846] [upholding warrantless search of person arrested for being under the influence of PCP in a public place].) Release of the offender without booking and incarceration furthermore could jeopardize the obtaining of scientific evidence of the offense. It is thus to be concluded that respondent was thus subject to a lawful warrantless "accelerated booking search" incident to his arrest.

The search of respondent's metal container was within the scope of a lawful accelerated booking search, because the container would have been subject to examination when respondent was booked. Prior to *Chadwick* and its progeny, several decisions held that booking officers may search an arrestee and his personal effects to prevent weapons and contraband from being brought into the jail. (See, e.g., *People* v. *Ross* (1967) 67 Cal.2d 64, 70 [60 Cal.Rptr. 254, 429 P.2d 606], revd. on other grounds, 391 U.S. 470 [20 L.Ed.2d 750, 88 S.Ct. 1850]; *People* v. *Gilliam* (1974) 41 Cal.App.3d 181, 189 [116 Cal.Rptr. 317]; *People* v. *Rogers* (1966) 241 Cal.App.2d 384, 389-390 [50 Cal.Rptr. 559].) One post-*Chadwick* decision reiterated: "When a person has been lawfully arrested on a criminal charge and undergoes the process of 'booking' at a police station prior to being held in jail, it is reasonable to conduct a search of his person and effects for the purpose of preventing the introduction of weapons or contraband into the jail." (*In re John C.* (1978) 80 Cal.App.3d 814, 820 [145 Cal.Rptr. 228] [upholding booking search of tinfoil packet found by arresting officers in a small package of cigarette papers]; see also *People* v. *Barajas, supra,* 81 Cal.App.3d at p. 1009.) Several recent decisions have held that *Chadwick* and its progeny do not alter this rule. (*People* v. *Harris* (1980) 105 Cal.App.3d 204, 216-217 [164 Cal.Rptr. 296]; *People* v. *Bullwinkle* (1980) 105 Cal.App.3d 82, 86-87 [164 Cal.Rptr. 163], hg. den. June 25, 1980.)

The order of dismissal should be reversed.

Appellant's petition for a hearing by the Supreme Court was denied October 29, 1980. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.