[Civ. No. 52383. First Dist., Div. Three. Nov. 6, 1981.]

RICKEY GENE MILLER, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Patrick R. Murphy, Public Defender, and David O. Headley, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, John T. Murphy, Robert R. Granucci and Ronald E. Niver, Deputy Attorneys General, for Real Party in Interest.

OPINION

WHITE, P. J.—This petition challenges denial of a motion to suppress the contents of a "Grodin's" bag taken from petitioner after his street arrest for auto burglary.

Petitioner, Rickey Gene Miller, by information filed in Contra Costa County is charged with burglary (Pen. Code, § 459) and receiving stolen property (Pen. Code, § 496).

Following arraignment in the superior court, petitioner moved (Pen. Code, § 1538.5) to suppress the contents of a "Grodin's" bag that he was carrying "tucked" or "rolled up" under his arm at the time of his arrest. The trial court, Honorable Coleman Fannin, judge, denied the motion to suppress. This petition for a writ of prohibition and/or mandate followed. Petitioner submitted his motion entirely upon the testimony elicited at the preliminary hearing (Honorable Robert G. McGrath, judge, presiding). Petitioner's trial was stayed by order of this court. On May 28, 1981, we issued the alternative writ after receiving requested opposition. At oral argument we permitted the parties to submit supplemental briefing in light of the recent United States Supreme Court decisions of *New York* v. *Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860] and *Robbins* v. *California* (1981) 453 U.S. 420 [69 L.Ed.2d 744, 101 S.Ct. 2841].

Officer Dale Carlson testified that five minutes after receiving a radio broadcast of a burglary "want and arrest on a Rickey Miller," he stopped petitioner, who he knew by name, walking in the area of "19th

and McDonald" in the City of Richmond. Officer Carlson, upon alighting from his patrol car, questioned petitioner relative to the contents of the brown paper bag. Petitioner responded "clothes," whereupon Officer Carlson advised petitioner that he was under arrest. He was not able to recall whether he or petitioner placed the "Grodin's" bag on the patrol car in the process of handcuffing and placing petitioner in the back seat of the vehicle. He did recall looking inside the bag when he "picked up the bag again to place it in the patrol car along with me, . . ." Officer Carlson's testimony identified "one white pair of pants with a blue belt, blue and white striped sweater, or shirt, and also a brown and white striped shirt. And a brown with suede front sweater. And there was [sic] also two sales slips inside." At the time he opened the bag and noted its contents Officer Carlson had not been advised that the reported burglary netted clothing. However, there is no argument but that the above described clothing was stolen approximately 10 to 15 minutes earlier from a locked and parked Datsun automobile owned by David Wechsler. Mr. Wechsler testified that he had parked his Datsun near his place of business (Marlene's) on Eighth Street near McDonald Avenue. The burglar pilfered the clothing from the passenger compartment by smashing the right rear window. A booking search at the Hall of Justice produced from petitioner's person a lengthy strip of wire, "[f]our inches by one and a half," when folded up several times. Petitioner does not contest the legality of the "booking search" producing the wire coat hanger or object to its admissibility in evidence. That Officer Carlson arrested him with legally sufficient probable cause is not contested by petitioner.

Petitioner's contention that the trial court erred in denying his motion to exclude from evidence the clothing and sales slips contained in the "Grodin's" paper bag presents the seemingly endlessly recurring constitutional issues in search and seizure law (U. S. Const., 4th Amend., Cal. Const., art. I, § 13) i.e., the scope of a warrantless search incident to a lawful custodial arrest.

Raising a contention with which we are well acquainted, petitioner asserts that the discovery of Mr. Wechsler's property (clothing and tags) resulting from Officer Carlson's act of opening and peering into the "Grodin's" bag without prior approval by judge or magistrate constituted per se an unreasonable search proscribed by both the federal and state Constitutions. Not surprisingly, petitioner relies upon *People v. Minjares* (1979) 24 Cal.3d 410, 416 [153 Cal.Rptr. 224, 591 P.2d 514]: "The Fourth Amendment guarantees individuals privacy in their

persons, homes, papers and effects against unreasonable searches and seizures. The 'cardinal principle' of Fourth Amendment analysis is that "'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."' [Citations.] If the warrantless search of the tote bag is to be upheld, it is the state's burden to show that the search falls within one of those exceptions. [Citations.]"

We find petitioner's contention not surprising in light of the dictum that appears in the next sentence in the quote from the *Minjares* opinion. "It is clear from *Chadwick* itself that the tote bag would not have been subject to a warrantless search if appellant had been arrested on the street and the bag taken from his possession. The government had also contended in *Chadwick* that any property in the possession of one who is arrested is subject to a warrantless search. In rejecting this contention the Supreme Court stated that 'warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest *either* if the "search is remote in time or place from the arrest," [citation], *or no exigency exists.* Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.' [Citations.]" (*Id.,* at pp. 419-420, italics in original.)

In *Minjares, supra,* 24 Cal.3d 410, our Supreme Court held that the Fourth Amendment proscribed the warrantless police search of a zippered red tote bag, containing incriminating evidence of an armed Safeway store robbery. The tote bag was discovered and removed from the locked trunk of an automobile that matched the description of the robbery getaway car.

In *Minjares,* the Attorney General did not rely upon the "search incident to arrest" exception to the warrant requirement. The People urged primarily the "automobile" (*Chambers* v. *Maroney* (1970) 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975] and alternatively the "instrumentality" (*People* v. *Teale* (1969) 70 Cal.2d 497 [75 Cal.Rptr. 172, 450 P.2d 564]) exceptions to the warrant requirement in seeking to justify the search of Minjares' tote bag. Both claimed exceptions were rejected. Essentially the *Minjares* court concluded that *United States* v. *Chadwick*

(1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476] clearly required that a warrant be obtained once luggage is under the exclusive control of the police unless some grave emergency or exigent circumstance necessitates the warrantless intrusion upon the individual's right of privacy. The fact that the tote bag was found in the course of a search of an automobile did not negate the underlying principles of *Chadwick*. (*Minjares, supra*, at p. 420.) Further, the court found the People's reliance upon the "instrumentality" exception misplaced and held it inapplicable. However, the narrow holding in *Minjares* is that "[w]here probable cause is believed to exist to search a container found within an automobile, the container may be seized and held until a magistrate determines whether a warrant may be issued for its search. Where exigent circumstances dictate an immediate search, a closed container found in an automobile may be searched without a warrant. [Citations.]" (At p. 423.) Thus *Minjares* is not entirely dispositive of the issue in the case at bench.

Petitioner also cites *People* v. *Silvey* (1980) 110 Cal.App.3d 67 [167 Cal.Rptr. 566], a decision rendered by Division Four of this court, and *People* v. *Pace* (1979) 92 Cal.App.3d 199 [154 Cal.Rptr. 811], a unanimous decision of this division (Div. Three) of this court for his argument that lacking exigent circumstances, when a bag such as that carried by Mr. Miller is reduced to exclusive police control, it cannot legally be searched without a warrant.[1]

In *People* v. *Pace, supra*, 92 Cal.App.3d 199, an appeal pursuant to Penal Code section 1538.5, subdivision (m), the sole question this division considered was "whether the warrantless search of appellant's lunchbox violated the constitutional guarantees [federal and state] prohibiting unreasonable searches and seizures. (U.S. Const., 4th Amend.;

---

[1]In *People* v. *Laiwa* (July 21, 1981) 1 Crim. 21900 (opn. by Barry-Deal, J., Scott, J., conc., White, P. J., dis.), this court reasoned that *Pace* could no longer be considered persuasive authority in light of *New York* v. *Belton, supra*, 453 U.S. 454. The *Laiwa* majority held the warrantless search of a custodial arrestee's handbag revealing PCP offended neither the federal nor California Constitutions. The circumstances in *Pace*, *Laiwa*, and the case at bench are similar in that at the time and place of the warrantless search incident to the defendants' lawful "street" arrest, the arrestee was handcuffed and secure in the patrol unit awaiting transportation prior to being booked and jailed. Exigent circumstances necessitating a contemporaneous warrantless search were nonexistent. The containers, prior to being searched, were unquestionably under the exclusive dominion and control of the arresting authority. The California Supreme Court granted a hearing in *Laiwa* on October 2, 1981. *Laiwa*'s cause, then, is still to be decided, (see *People* v. *Murphy* (1980) 108 Cal.App.3d 475, 478 [166 Cal.Rptr. 547]) and our ruling may not be cited as precedent.

Cal. Const., art. I, § 13.)" (*Id.*, at p. 201.) We answered the question in the affirmative, compelled in our view by the logic and underlying rationale of *United States* v. *Chadwick, supra,* 433 U.S. 1, as correctly analyzed in *United States* v. *Schleis* (8th Cir. 1978) 582 F. 2d 1166, en banc.

The Attorney General in *Pace* argued that Pace could have no justifiable greater expectation of privacy in his lunchbox, a *thing* that he was carrying, than he would have in things carried on his person when searched incident to a lawful arrest. The Attorney General urges likewise in the instant case. But we rejected *mass* and *locks* as having any relevancy to a person's legitimate expectations of privacy where the authorities are concerned. (*Id.*, at pp. 205-206, fn. 5.) We pointed out that "[T]he search of a person incident to arrest, however, is not permitted because of the absence of a legitimate expectation of privacy.... A warrantless search of the person is permitted because of the need to protect the arresting officers as well as others and as a precaution against the destruction of evidence." (*Id.*, at p. 206.) Further, in *Pace, supra,* at page 204, this division opined that in California "[t]he warrant requirement must be satisfied in every case where exigent circumstances do not justify ignoring it." We further noted that necessarily this is the case because California constitutional principle placed the burden on the People to justify a warrantless search, citing *People* v. *Norman* (1975) 14 Cal.3d 929, 933 [123 Cal.Rptr. 109, 538 P.2d 237]. In *Norman*, a warrantless search of a soft tobacco pouch, dropped by the defendant incident to his custodial arrest for traffic offenses which revealed contraband narcotics, was held to be illegally seized in violation of article I, section 13 of the California Constitution. (*Id.*, at p. 938.) The *Norman* court, at page 936, analyzed the dropped (under the defendant's van) tobacco pouch as an object that was within the arrestee's immediate control or possession, but concluded that the evidence was insufficient to establish probable cause for a warrantless protective search for weapons or for any other justifiable reason, i.e., instrumentalities or fruits of crime or contraband.

In *Pace*, we found that "Pace's expectation of privacy was no less legitimate than Chadwick's." (*Id.*, at p. 206.) Understandably, petitioner seeks the same assessment of his right of privacy. But even Pace's legitimate expectations would be immaterial in light of current Fourth Amendment principles. On July 1, 1981, the United States Supreme Court rendered a major decision on Fourth Amendment law as regards search incident to lawful custodial arrest. (See *New York* v. *Belton, su-*

*pra*, 453 U.S. 454.) The *Belton* court drew a "bright line" separating legal searches from illegal searches, ruling that the passenger interior compartment of a car and all containers therein were subject to warrantless search incident to the arrest of any person recently in the car. It rejected the notion that the police would be required to obtain a warrant to search containers found in the car but reduced to the exclusive possession of the officers before search.

Belton's Fourth Amendment right of privacy was implicated when a car in which he was a passenger was stopped for excessive speed. The odor of burnt marijuana, together with other incriminating evidence detected by the alert state trooper resulted in all four occupants of the car being ordered to get out and being placed under arrest for unlawful possession of marijuana. After pat-searching and isolating each arrestee a safe distance from the other, the policeman returned to the car, secured and examined the contents of an envelope marked "Supergold." The envelope contained marijuana. After first giving *Miranda* warnings and searching each arrestee, the officer redirected his investigation to the car and searched the passenger compartment. He unzipped a pocket of a black leather jacket seized from the back seat. His search produced cocaine. The jacket belonged to Belton. The *Belton* court found that the jacket was within the area "'within the arrestee's immediate control' within the meaning of the *Chimel* case." (453 U.S. at p. 462 [69 L.Ed.2d at p. 776].) (*Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034].) The *Belton* court concluded: "The search of the jacket, therefore, was a search incident to a lawful custodial arrest, and it did not violate the Fourth and Fourteenth Amendments." 453 U.S. at pp. 462-463 [69 L.Ed.2d at p. 776].)

The *Belton* court commenced its analysis with *Chimel* v. *California, supra*, 395 U.S. 752, and purported not to alter the fundamental principles established therein. (See *Belton, supra*, 453 U.S. 454 fn. 3 [69 L.Ed.2d p. 775].) *Chimel* recognized that a lawful custodial arrest creates a situation justifying a contemporaneous warrantless search of the arrestee's person and the immediately surrounding area from within which the arrestee might gain possession of a weapon to resist arrest or facilitate escape or to conceal or destroy evidence. *Chimel* emphasized that the "search incident to arrest" exception to the warrant requirement was limited by the principle "'[t]he scope of [a] search must be "strictly tied to and justified by" the circumstances which rendered its initiation permissible.'" (*Chimel, supra*, at p. 762 [23 L.Ed.2d at p. 693].) The court stated in *People* v. *Pace, supra*, 92 Cal.App.3d at

page 204: "Warrantless searches incident to arrest are justified on the ground that it would be senseless to require 'the arresting officer to calculate the probability that weapons or destructible evidence may be involved.' [Citation.] But where the police have the item in their exclusive control, no calculation is necessary and the justification for a warrantless search no longer obtains. When the justification no longer obtains, a warrant is necessary because 'the scope of a warrantless search must be commensurate with the rationale that. excepts the search from the warrant requirement.' [Citations.]"

Unquestionably at the time of seizure and search Belton's jacket was in the trooper's exclusive control and therefore inaccessible to Belton for weapons or destruction of the cocaine. Exclusive control and inaccessibility notwithstanding, the *Belton* court determined that *Chimel's* principles in the context of the passenger compartment recently occupied by the arrestee were left intact by the workable rule promulgated. "Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

"It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. [Citations.] Such a container may, of course, be searched whether it is open or closed, *since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may . have."* (*Belton, supra,* 453 U.S. at pp. 460-461 [69 L.Ed.2d at p. 775], italics added.)

Thus, the *Belton* court's physical lines (relatively narrow compass of the passenger compartment) drawn to guide law enforcement in determining *what* they could search incident to a lawful custodial arrest seemingly no longer recognizes the distinction between seizure of a container and a search of its contents. Before *Belton, Chimel's* standard placed temporal and spatial limitations on searches incident to arrest; but they ceased to apply when the arrestee was safely in custody with no possibility that weapons, contraband or other incriminating evidence could be reached. (See *Belton, supra,* 453 U.S. at p. 465 [69 L.Ed.2d at p. 778], Brennan, J., dis. opn.)

In the case at bench, the record is silent, giving no hint as to Officer Carlson's reason for searching petitioner's "Grodin" paper bag. Officer Carlson testified that during the detention petitioner made no threatening gestures and that the officer at no time feared for his safety. Further, Carlson testified that at the time of search, he was unaware that clothing was taken in the auto burglary. The People contend in this court that the inspection of petitioner's paper bag was a proper search incident to his arrest. Belton's *bright line rule* said *to guide the officer in the field* compels logically that we agree, as regards petitioner's right of privacy under the Fourth Amendment of the United States Constitution. The warrantless search of Belton's "container" (his jacket) without probable cause to believe that it contained contraband or evidence of crime was determined to be incidental to his lawful custodial arrest, and therefore not violative of the Fourth and Fourteenth Amendments. ■ By parity of reasoning, Officer Carlson's search of petitioner's paper bag was not proscribed by the Fourth Amendment.

The more difficult question is whether *Belton* also states California constitutional principles. (Cal. Const., art. I, § 13.) ■ It is well established that the California Constitution has independent force and that state courts may adopt more exacting standards for searches in this state than those adopted by the federal courts. (See *People* v. *Brisendine* (1975) 13 Cal.3d 528, 545 [119 Cal.Rptr. 315, 531 P.2d 1099], and cases cited therein; *Jennings* v. *Superior Court* (1980) 104 Cal. App.3d 50, 56 [163 Cal.Rptr. 391].) Moreover, the California Supreme Court has advised us that "for the sake of convenience [it] often refer[s] to constitutional guarantees, both state and federal, against unreasonable searches and seizures under the rubric of 'Fourth Amendment' rights, . . ." (*People* v. *Triggs* (1973) 8 Cal.3d 884, 891-892, fn. 5 [106 Cal.Rptr. 408, 506 P.2d 232].) Thus, it is necessary to examine decisions of the California Supreme Court to determine whether a rule different from that stated in *Belton* applies to the California Constitution.

The starting point for examining California law on search incident to arrest would seem to be the decision in *People* v. *Chimel* (1968) 68 Cal.2d 436 [67 Cal.Rptr. 421, 439 P.2d 333], the decision overturned by the United States Supreme Court in *Chimel* v. *California, supra*, 395 U.S. 752. The defendant there was arrested in his home and the entire house and garage were searched for fruits of the coin shop burglary for which he was arrested. The California Supreme Court upheld the search, calling it a valid search incident to arrest and citing both United

States and California authorities. The United States Supreme Court disagreed, establishing the rule that a search incident to arrest was limited to the arrestee and the immediately surrounding area dictated by the need "to remove any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape" and the need "to prevent the concealment or destruction" of evidence. (*Id.*, at p. 763 [23 L.Ed.2d at p. 694].) Thus, as of 1968 or 1969, there was no California doctrine more restrictive than the Fourth Amendment. The pertinent question is whether in the intervening years California has established a more restrictive interpretation of "search incident to arrest" than the United States Supreme Court applied in *Chimel*.

Our California Supreme Court has stated that article I, section 13 of the California Constitution requires a more exacting standard, with respect to searches and seizures, for cases arising in California than *minimum* standards required in order to satisfy the Fourth Amendment's proscriptions of unreasonable searches. (See *People v. Brisendine, supra*, 13 Cal.3d 528, 545.) *Brisendine*, of course, demonstrates that in one area interpreting "search incident to arrest," California has staged a significant departure from Fourth Amendment law.

As the California Supreme Court explained in detail in *People v. Brisendine, supra*, at pages 545-552, California does not subscribe to the rule of *United States v. Robinson* (1973) 414 U.S. 218 [38 L.Ed.2d 427, 94 S.Ct. 467], insofar as it permits full searches of any person under lawful custodial arrest without inquiry into whether the justifications for search incident to arrest apply to the particular arrestee. In California, only a pat-search for weapons is permitted when the arrest is for a crime without "instrumentalities" or "fruits" and for which the defendant may not be booked and incarcerated unless there are particular facts which would lead the officer to believe the subject possesses a weapon (*People v. Superior Court (Simon)* (1972) 7 Cal.3d 186, 202-206 [101 Cal.Rptr. 837, 496 P.2d 1205]). Thus, in *Brisendine* though the officer was permitted to pat-down the defendant's pack before placing him in the patrol car and was even permitted to enter the pack because its rigid structure made the pat-down meaningless, he was not permitted to inspect the contents of a frosted plastic bottle in connection with an arrest for violation of a campfire ordinance. This was in direct and acknowledged contrast to the decision in *Robinson*, where the contents of a cigarette package were examined during a search incident to arrest for driving with a revoked license. *Brisendine* is an

example of the California Supreme Court examining the justification for the rule before applying it to the particular case, not following the *Robinson* court's lead of applying a broad rule to all arrest situations without litigating in each case whether the reasons for the rule existed. (See *People* v. *Maher* (1976) 17 Cal.3d 196 [130 Cal.Rptr. 508, 550 P.2d 1044]; *People* v. *Longwill* (1975) 14 Cal.3d 943 [123 Cal.Rptr. 297, 538 P.2d 753]; *People* v. *Norman, supra,* 14 Cal.3d 929.)

*Brisendine* and related cases establish that California has a different rule for *who* can be subjected to a full search incident to an arrest when the arrestee's alleged crime does *not* ultimately require booking and incarceration. The *Brisendine* court pointedly did not determine the merit of *Robinson*'s *implication* for arrestees like petitioner arrested for alleged crimes ultimately requiring booking and jail, crimes that more often involve "instrumentalities" and "fruits" and the probability of weapons. (*Brisendine, supra,* 13 Cal.3d at p. 547.) As perceived by our California Supreme Court in *Brisendine,* the *implication* of *Robinson* is that the individual retains no significant Fourth Amendment interest in the privacy of his or her person when lawfully subjected to custodial arrest. (See *Brisendine, supra,* at p. 547.) Hereinabove we have noted that the *Belton* court recognizes the arrestee's privacy interest *in the container* but reasoned that the lawful custodial arrest justified any infringement. (See opn., *ante,* at p. 502.) It is expected that within the not too distant future the California Supreme Court will examine and determine the parameters or scope of search incident to custodial arrest under the California Constitution. Presently we have found no case precedent, and none has been brought to our attention, suggesting that our Supreme Court will significantly alter its course in exercising the mandate given it in article I, section 24 of the California Constitution, "'Rights guaranteed by this Constitution are not dependent upon those guaranteed by the United States Constitution.'" (*People* v. *Norman, supra,* 14 Cal.3d 929, 939, fn. 10.) We think that our Supreme Court will continue to adhere to the rationale "that the traditional rationale of warrantless searches incident to arrests is the two-fold need to uncover evidence of the crime and weapons which might be used to injure the arresting officer or effect an escape," the basic limitation reaffirmed in *Chimel.* (*Brisendine, supra,* at p. 539.)

In the aftermath of *United States* v. *Chadwick, supra,* 433 U.S. 1, there has been little or no occasion to define the scope of *what* can be searched incident to arrests in California any differently than under the Fourth Amendment of the United States Constitution. The *Belton* court

453 U.S. at pages 461-462 [69 L.Ed.2d at page 776] distinguished both *United States* v. *Chadwick, supra,* 433 U.S. 1, and *Arkansas* v. *Sanders* (1979) 442 U.S. 753 [61 L.Ed.2d 235, 99 S.Ct. 2586], on the grounds that neither involved an arguably valid search incident to a lawful custodial arrest. In *Chadwick,* the search was conducted long after the arrest had taken place, and in *Sanders,* the court explicitly stated that it did not consider the search incident to arrest issue because the state had not argued the question and it appeared that the suitcase was not in the arrestee's control, but was in the trunk of the taxicab.

Although *Belton* did not purport to establish a rule defining the "area within the immediate control," its clear implication is that a package carried by an arrestee comes within the scope of the rule. The real significance of *Belton* for petitioner's case is that it establishes that the rules of *Chadwick* and *Sanders* do not override those concerning searches incident to arrest. Thus, though *Chadwick* went to great lengths to explain why the rules for searches incident to arrest did not apply to luggage or other personal property reduced to the exclusive control of law enforcement officers (433 U.S. at pp. 14-15 [53 L.Ed.2d at pp. 550-551]), ["there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence"], and thereby suggested that the validity of a search incident to arrest depended upon existence of a danger that the arrestee might gain access, *Belton* clearly established that absence of the danger of access did not remove the officer's authority to search.

While the *Belton* court followed the lead of the *Robinson* court and fashioned *rules* to fit *categories* of cases, California's Supreme Court decries such an approach to warrantless searches. "Once again we emphasize that in reviewing a warrantless search to determine the reasonableness of its breadth a court is ill-advised to apply hard and fast rules. Rather we must be concerned, in a case-by-case analysis, with whether the extent of the search exceeded the attainment of the objectives which justified its inception." (*Brisendine, supra,* 13 Cal.3d at p. 541.)

As discussed above, in *People* v. *Minjares, supra,* 24 Cal.3d 410, a tote bag in the trunk of a car was searched after the driver had been arrested for robbery and taken to the police station. Relying upon *United States* v. *Chadwick, supra,* 433 U.S. 1, the *Minjares* court concluded that a warrant should have been obtained before searching once the tote bag came under the exclusive control of the police. The court went on

to state, in dictum: "It is clear from *Chadwick* itself that the tote bag would not have been subject to a warrantless search if appellant had been arrested on the street and the bag taken from his possession." (24 Cal.3d at pp. 419-420.)

*Chadwick* stated only that a warrant would be required to search luggage or other personal property *not immediately associated with the person of the arrestee* in circumstances when there was no longer any danger that the arrestee might gain access to the property (433 U.S. at p. 15 [53 L.Ed.2d at pp. 550-551]). *Minjares* interpreted *Chadwick* to apply to a tote bag carried by the arrestee. The *Minjares* dictum did not result from our Supreme Court reading *Chadwick* too broadly. Arguably, the dictum indicates that a tote bag in an arrestee's possession would not be viewed by our Supreme Court as "immediately associated" with his person.

The dictum in *People* v. *Minjares, supra*, 24 Cal.3d 410, coupled with the California Supreme Court's penchant for looking to justification for the rule rather than relying only upon broad categorical rules, suggests a departure from Fourth Amendment law when considering *what* might be searched incident to arrest. In our view California courts can protect the logic of both *Chimel* and *Chadwick* by walking a different line from that drawn by the *Belton* court, acknowledging that in a search incident to arrest the police have the right to search clothing, search surrounding areas and seize containers to prevent access to weapons or to evidence or contraband which might be destroyed. However, when containers have been reduced to the exclusive control of the officers, absent exigent circumstances or the accelerated booking search rationale, discussed below, they may not be searched without warrant. Such an approach is suggested by the dictum of *Minjares* and is more consistent with the California Supreme Court's approach to establishing rules than is the decision in *Belton. Brisendine, Norman* and related cases establish strong precedent for California's departure from Fourth Amendment law on searches incident to arrest.

The Attorney General respectfully submits that *People* v. *Pace, supra*, 92 Cal.App.3d 199, is a "disaster" and that we should repudiate it "to the extent that it suggests that a paper bag [in the possession of] an arrestee may not be searched without a warrant."

In *Pace* at page 204, we reasoned that "[t]he warrant requirement must be satisfied in every case where exigent circumstances do not jus-

tify ignoring it." We continue to adhere to that view. *Pace*, we view as sound and controlling California constitutional right of privacy law. *Belton* "substantially expands the permissible scope of searches incident to arrest by permitting police officers to search areas and containers the arrestee could not possibly reach at the time of arrest." (*Id.*, at p. 466 [69 L.Ed.2d at p. 779], Brennan, J., dis..) In the *Belton* context, the prosecution is burdenless, while in California the burden is placed upon the prosecution to establish the legality of any search not conducted pursuant to a warrant.

The Attorney General argues that *Pace* made two major conceptual errors. The two asserted flaws are: (1) failure to follow the accepted rule that articles immediately associated with the arrestee may be searched incident to his arrest; and (2) failure to distinguish between containers which deserve Fourth Amendment protection and those which do not.

The pros and cons of *Pace* have been discussed extensively in post-*Pace* decisions such as *People v. Flores* (1979) 100 Cal.App.3d 221 [160 Cal.Rptr. 839], *People v. Harris* (1980) 105 Cal.App.3d 204 [164 Cal.Rptr. 296], and *People v. Silvey, supra,* 110 Cal.App.3d 67.[2]

The courts in this district which have criticized *Pace* have done so in part because of its failure to consider the "accelerated booking search" rationale and to acknowledge *Chadwick*'s exception for items immediately associated with the person. (See, e.g., *People v. Harris, supra,* 105 Cal.App.3d 204, 213-218; *People v. Flores, supra,* 100 Cal.App.3d 221, 228-233.) However, the People did not argue these theories to the *Pace* court. In this case the trial court relied upon the accelerated booking search rationale. Thus, though the Attorney General casts his arguments in the rubric of "search incident to arrest," the accelerated booking search argument is clearly raised.

In *People v. Bundensen* (1980) 106 Cal.App.3d 508 [165 Cal.Rptr. 174], this court (White, P. J., with Scott, J. and Feinberg, J., conc.) discussed the accelerated booking rule and how it related to *Chadwick* and *Pace*. In *Bundesen*, during the arrestee's transportation to the police department for booking an officer searched his wallet (which he had

---

[2]The United States Supreme Court vacated the decision in *Silvey* and remanded it to the Court of Appeal "to consider whether its judgment is based on federal or state constitutional grounds, or both." (453 U.S. 918 [69 L.Ed.2d 1000, 101 S.Ct. 3153].)

found under the seat of his car). Defendant contested the wallet search on the basis of *Chadwick, Pace*, and other decisions in the *Chadwick* line of authority. This court declined the defendant's suggestion that it rule that *Chadwick* and its progeny impliedly invalidated booking searches of all closed containers, finding instead that *Chadwick* did not apply to containers immediately associated with the person of the arrestee.

*Pace* is consistent with *Bundesen* only if the lunchbox carried by the arrestee in *Pace* is not considered to be immediately associated with the person of the arrestee. Admittedly, the "accelerated booking search" exception to the warrant requirement was not discussed by the *Pace* court. Because we have determined that California constitutional law of search incident to custodial arrest is more restrictive in scope than that afforded by *Belton*'s implications, we must determine whether petitioner's "Grodin's" paper bag is "immediately associated with" his person. We hold that it is not. We find that it was merely a container reduced to Officer Carlson's exclusive control. Thereafter, a warrant was required to legalize the search.

Case law has established that purses (*People* v. *Barnett* (1980) 113 Cal.App.3d 563 [170 Cal.Rptr. 255]; *People* v. *Harris, supra,* 105 Cal.App.3d 204), shoulder bags (*People* v. *Flores, supra,* 100 Cal.App. 3d 221) and wallets (even when found under an auto seat) (*People* v. *Bundesen, supra,* 106 Cal.App.3d 508) are items "immediately associated with the person of the arrestee" and are searchable without a warrant in a booking or accelerated booking search. The dictum in *Minjares*, if it was mindful of the accelerated booking search principle and of the *Chadwick* exception for items immediately associated with the arrestee, suggests that tote bags are not immediately associated. Brown paper bags, if they must be placed in one or the other category, would seem not to associate closely to the person. Instead, they are containers occasionally carried for a specific purpose. Thus, consistent with *Bundesen* (and not in conflict with *Pace* even had we considered the accelerated booking search principle) we have concluded that the search here was not justified by the accelerated booking search rule.

The Attorney General argues that a paper "Grodin's" bag should not be afforded the same protection as a footlocker, suitcase, or other more substantial container. The same issue was before the United States Supreme Court in *Robbins* v. *California* (1981) 453 U.S. 420 [69 L.Ed.2d 744, 101 S.Ct. 2841]. The plurality opinion, delivered by Justice Stew-

art and joined by three other justices rejected the argument that distinctions should be made between kinds of containers, specifically noting that "[w]hat one person may put into a suitcase, another may put into a paper bag." (453 U.S. at p. 427 [69 L.Ed.2d at p. 751].) Chief Justice Burger concurred in the judgment without joining any opinion and Justice Powell concurred because he concluded that the manner in which the marijuana bricks were packaged suggested an expectation of privacy in the green opaque plastic bundle. Three justices dissented.

Although the decision in *Robbins* does not represent the opinion of five justices of the Supreme Court, it is significant that only Justice Powell, among all the justices, gave any expression of support for the "unworthy container" doctrine urged by the Attorney General.

There are California decisions which suggest that cases such as petitioner's should be decided by determination of what expectation of privacy an individual might reasonably have for a particular container. (See, e.g., *People* v. *Suennen* (1980) 114 Cal.App.3d 192 [170 Cal. Rptr. 677] (pillowcase search o.k.); *People* v. *Diaz* (1980) 101 Cal. App.3d 440 [161 Cal.Rptr. 645] (Jack-in-the-Box cup with lid could be searched).) The reasoning of these opinions is open to question in light of the *Robbins* decision. Even without *Robbins*, however, these decisions would have only slight relevance here, where the paper bag was carried by the arrestee under his arm, rolled up. Unlike the pillow case and cup, which were both found in an auto search, the circumstances of possession here strongly suggested a privacy expectation in the contents of the paper bag.

The Attorney General argues that a search of petitioner's paper bag incident to his arrest is justified by a "substantially reduced expectation of privacy in the arrestee's person and effects."

In an apparent attempt to conform his argument to the principles stated in *Chadwick* and *Sanders*, where the arrestees must similarly have experienced a reduced expectation of privacy (if the Attorney General's theory prevails), the Attorney General appears to argue that the expectation of privacy is diminished only for a reasonable time and to a reasonable extent. Presumably, the "time" and "extent" relate to the requirements that a search incident to arrest be reasonably contemporaneous in time and place and only the immediately surrounding area be searched.

To state that the arrestee has a diminished expectation of privacy or, as the *Belton* court stated, that a lawful custodial arrest "justifies the infringement of any privacy interest" (453 U.S. at p. 461 [69 L.Ed.2d at p. 775]) is really to beg the question. In neither case is there an attempt to determine if the policy justifications for permitting warrantless searches incident to arrest extend to searches of containers reduced to the exclusive control of the police. As aforestated and oft repeated, the California Supreme Court has shown that when it interprets the scope of the search incident to arrest doctrine it does so by examining the underlying rationale for excusing such searches from the warrant requirement. Only if the rationale applies to the newly considered category of searches does that court apply the broadly stated rule of *Chimel*. Thus, in California the question cannot be answered by referring to diminished expectation of privacy or the *ipse dixit* conclusion that a lawful arrest justifies infringement of any privacy interest.

Herein the record we have reviewed reveals that the police seized a container under circumstances in which a booking search would not be justified (the container was not immediately associated with the arrestee) and reduced it to their exclusive control. Justification for a search incident to arrest, as stated in *Chimel*, has not been demonstrated. Consistent with the dictum in *Minjares* and the approach of the California Supreme Court (in *Brisendine*) in determining whether the seized article can be searched, when the justification for the warrantless search is removed, the requirement that a warrant be obtained is reinstated. Unless and until the California Supreme Court repudiates its dictum in *Minjares* or reveals that it has adopted the "bright lines" approach in preference to its approach of analyzing each situation in light of the justification for the rule, this court continues to regard *Pace* as California precedent to follow. When a container, not immediately associated with an arrestee, is seized and in the exclusive control of the police (whether taken from his person or his automobile), it cannot be searched without a warrant except under exigent circumstances. The People having failed to carry their burden, let the peremptory writ issue.

Feinberg, J., concurred.

**BARRY-DEAL, J.**—I respectfully dissent.

I have previously set out in detail my analysis of what the majority accurately describes as the "seemingly endlessly recurring" issue pre-

sented in this case. (*People* v. *Laiwa* (Cal.App.), hg. granted Oct. 2, 1981.) Since our Supreme Court has granted a hearing in *Laiwa*, we may reasonably hope that the court will, in the not too distant future, resolve the state of law in California on the scope of a warrantless search incident to a lawful custodial arrest. In the interim, we have no choice but to add one more written decision and dissent to those which have come before. I write briefly merely to reiterate my position with Scott, J., concurring, in *Laiwa*, as follows.

Searches conducted without warrant violate the Fourth Amendment of the United States Constitution and are per se unreasonable, subject only to a few specifically established and well-delineated exceptions. (*Mincey* v. *Arizona* (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 298-299, 98 S.Ct. 2408]; *People* v. *Minjares* (1979) 24 Cal.3d 410, 416 [153 Cal.Rptr. 224, 591 P.2d 514].) Among these exceptions is the warrantless search incident to arrest (*People* v. *Superior Court* (*Kiefer*) (1970) 3 Cal.3d 807, 812-813 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559], citing generally *Warden* v. *Hayden* (1967) 387 U.S. 294, 300-310 [18 L.Ed.2d 782, 788-794, 37 S.Ct. 1642], and *Chimel* v. *California* (1969) 395 U.S. 752, 762-763 [23 L.Ed.2d 685, 693-694, 89 S.Ct. 2034]) which is a reasonable search under the Fourth Amendment. (*New York* v. *Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860].)

*Belton* has clarified that *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476] does not apply to the issue here under consideration. To the extent that they held or indicated otherwise, *People* v. *Pace* (1979) 92 Cal.App.3d 199 [154 Cal.Rptr. 811] and *People* v. *Minjares, supra,* 24 Cal.3d 410, were incorrect and should not be followed. Although *Belton* involved a search of an automobile, its holding applies to all custodial arrest searches. The search in the case before us did not offend federal constitutional provisions.

Nor does the search in the instant case violate article I, section 13 of the Constitution of the State of California. Our Supreme Court in *People* v. *Brisendine* (1975) 13 Cal.3d 528 [119 Cal.Rptr. 315, 531 P.2d 1099] did not address the question of searches incident to a lawful custodial arrest, and thus *Brisendine* does not qualify the authority of the police to search such an arrestee. I conclude that, incident to a lawful arrest for an offense for which an individual is to be booked and incarcerated, California law, like federal law, permits the warrantless search both of the person of the arrestee and of containers carried on his per-

son or within the area of his immediate control for weapons and for evidence of contraband or instrumentalities of the crime.

The search in this case was also justified as an accelerated booking search. (*People* v. *Longwill* (1975) 14 Cal.3d 943 [123 Cal.Rptr. 297, 538 P.2d 753]; *People* v. *Bundesen* (1980) 106 Cal.App.3d 508 [165 Cal.Rptr. 174]; *People* v. *Bullwinkle* (1980) 105 Cal.App.3d 82 [164 Cal.Rptr. 163].)

I would deny the writ.

A petition for a rehearing was denied December 4, 1981, and the petition of real party in interest for a hearing by the Supreme Court was denied January 20, 1982. Kaus, J., and Broussard, J., were of the opinion that the petition should be granted.